# Exhibit A

Pangram. Pangram 4.1

# AI Detection Report for INTRODUCTION Count Three charges Khalwinder Singh...

Nov 2, 2026 | 6,867 Words | Pangram 4.1

## Summary

We believe that this text is a mix of AI, AI-assisted, and human-written content.

### Authorship Breakdown




| | |
|---|---|
| 76 % of the document | AI Generated |
| 1 % of the document | AI Assisted |
| 23 % of the document | Human Written |

### Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**AI** | 26 Words | Medium Confidence

INTRODUCTION Count Three charges Khalwinder Singh Bhengura, a lawful permanent resident, with the federal crime of voting while an alien under 18 U.S.C. § 611.

**AI** | 16 Words | High Confidence

The charge assumes that Congress may determine who is qualified to vote in a federal election.

**AI** | 4 Words | Medium Confidence

The Constitution provides otherwise.

Pangram.

AI | 26 Words | High Confidence

It fixes the electorate for the House and Senate by reference to each State's electorate for the most numerous branch of its legislature, U.S.

AI | 2 Words | Low Confidence

Const. art.

AI | 5 Words | Medium Confidence

I, § 2, cl. 1; amend.

AI | 12 Words | High Confidence

XVII, and commits the appointment of presidential electors to the States, id.

AI | 1 Words | Low Confidence

art.

AI | 4 Words | Medium Confidence

II, § 1, cl. 2.

AI | 15 Words | High Confidence

The Elections Clause gives Congress power over the "Times, Places and Manner" of congressional elections.

Pangram.

AI | 8 Words | Low Confidence

U.S. Const. art. I, § 4, cl. 1.

AI | 29 Words | Low Confidence

That Clause "empowers Congress to regulate how federal elections are held, but not who may vote in them." Arizona v. Inter Tribal Council of Arizona, Inc., 570 U.S.

AI | 3 Words | Low Confidence

1, 16 (2013).

AI | 21 Words | High Confidence

Section 611 does not regulate how an election is conducted; it prohibits a class of persons from voting in federal elections.

AI | 22 Words | Medium Confidence

It therefore prescribes a voter qualification. A federal criminal statute must bear a constitutionally sufficient relationship to an enumerated power of Congress.

Human Written | 3 Words | Low Confidence

See Bond v.

Human Written | 15 Words | Low Confidence

United States, 572 U.S. 844, 854 (2014); United States v. Fox, 95 U.S.

Pangram.

**Human Written** | 3 Words | Low Confidence

670, 672 (1878).

**AI** | 28 Words | High Confidence

Section 611 exceeds the procedural authority conferred by the Elections Clause, and no other enumerated power authorizes Congress to displace the States' constitutionally assigned authority over voter qualifications.

**AI** | 34 Words | Low Confidence

On October 1, 2026, the United States District Court for the Southern District of Florida held § 611 unconstitutional as applied to an alien charged with voting in a federal election and dismissed the charge.

**Human Written** | 3 Words | Low Confidence

United States v.

**Human Written** | 2 Words | Low Confidence

Cox, No.

**Human Written** | 8 Words | Medium Confidence

0:25-cr-60249, 2026 U.S. Dist.

**Human Written** | 9 Words | High Confidence

LEXIS 225387, at *21, *30, *34–35 (S.D.

Human Written | 1 Words | Medium Confidence

Fla.

Human Written | 10 Words | Low Confidence

Oct. 1, 2026), appeal filed (11th Cir. Oct. 2, 2026).

AI | 14 Words | Medium Confidence

Cox is persuasive district-court authority, not controlling precedent, and its appeal remains pending.

Human Written | 58 Words | High Confidence

Its reasoning nevertheless follows the constitutional text and the Supreme Court's decision in Inter Tribal Council: "[t]he States have sole authority to set voter qualifications"; § 611 "has the effect of setting a voter qualification in federal elections"; and "[f]oundational constitutional limits do not give way, even to capacious general provisions of enumerated congressional power." Id.

Human Written | 5 Words | Low Confidence

at *21, *30, *34–35.

AI | 11 Words | Low Confidence

The same reasoning applies here. Texas, not Congress, determines whether Mr.

AI | 9 Words | Medium Confidence

Bhengura was qualified to vote on November 5, 2024.

AI | 18 Words | High Confidence

Texas had answered that question through its own constitution and statutes and had enacted its own criminal prohibition.

AI | 5 Words | Low Confidence

Count Three should be dismissed.

**Human Written** | 9 Words | Medium Confidence

BACKGROUND The Charge The Superseding Indictment alleges that Mr.

**Human Written** | 38 Words | High Confidence

Bhengura, a citizen of India who became a lawful permanent resident on June 29, 2022, “voted in person for the general and special elections” on November 5, 2024, at the East Library and Recreation Center in Arlington, Texas.

**Human Written** | 2 Words | Medium Confidence

ECF No.

**Human Written** | 20 Words | High Confidence

32 ¶¶ 1, 5. The election included offices for President, Vice President, presidential elector, United States Senator, and United States Representative.

**Human Written** | 5 Words | Medium Confidence

Count Three alleges that Mr.

**Human Written** | 33 Words | High Confidence

Bhengura, “an alien, knowing that he was not a United States citizen,” voted in an election held wholly or partly to elect candidates for federal office, in violation of 18 U.S.C.

**Human Written** | 20 Words | Medium Confidence

§ 611. ECF No. 32 at 5. Counts One and Two charge false claims of citizenship under 18 U.S.C.

**Human Written** | 10 Words | Low Confidence

§ 1015(f) and are not the subject of this motion.

**Human Written** | 58 Words | High Confidence

The Statute Section 611(a) provides: It shall be unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for the office of President, Vice President, Presidential elector, Member of the Senate, Member of the House of Representatives, Delegate from the District of Columbia, or Resident Commissioner[.]

**Human Written** | 6 Words | Medium Confidence

18 U.S.C. § 611(a).

**Human Written** | 60 Words | High Confidence

The prohibition does not apply when: (1) the election is held partly for another purpose; (2) a state constitution, state statute, or local ordinance authorizes aliens to vote for that other purpose; and (3) voting for that other purpose is conducted independently so that an alien may vote for that purpose but cannot vote for a candidate for federal office.

**Human Written** | 1 Words | Medium Confidence

Id.

**Human Written** | 20 Words | High Confidence

§ 611(a)(1)–(3). A violation is punishable by a fine, imprisonment for not more than one year, or both.

**Human Written** | 3 Words | Medium Confidence

Id. § 611(b).

**Human Written** | 19 Words | High Confidence

Congress enacted § 611 in 1996 as § 216 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.

**Human Written** | 2 Words | Medium Confidence

L. No.

**Human Written** | 87 Words | High Confidence

104-208, div. C, § 216(a), 110 Stat. 3009- 546, 3009-572. The Eleventh Circuit rejected due-process and vagueness challenges to the statute in United States v. Knight, 490 F.3d 1268, 1270–72 (11th Cir. 2007), but did not consider whether the Constitution granted Congress power to enact § 611. Texas Law At the time of the charged conduct, the Texas Constitution provided that a qualified voter must be "a citizen of the United States," subject to the other qualifications and disqualifications prescribed by Texas law.

**Human Written** | 22 Words | Medium Confidence

Tex. Const. art. VI, § 2(a). The Texas Election Code likewise required United States citizenship to vote and to register to vote.

**Human Written** | 1 Words | Low Confidence

Tex.

**Human Written** | 1 Words | Medium Confidence

Elec.

**Human Written** | 42 Words | High Confidence

Code §§ 11.002(a)(2), 13.001(a)(2). Texas law also made it an offense to "vote[] or attempt[] to vote in an election in which the person knows the person is not eligible to vote." Id. § 64.012(a)(1).

**Human Written** | 11 Words | Medium Confidence

The offense is a seconddegree felony unless another statutory provision applies.

**Human Written** | 1 Words | Low Confidence

Id.

**Human Written** | 3 Words | Medium Confidence

§ 64.012(b).

**Human Written** | 30 Words | High Confidence

On November 4, 2025, Texas voters approved an amendment adding "persons who are not citizens of the United States" to the classes of persons expressly prohibited from voting in Texas.

**Human Written** | 3 Words | Medium Confidence

Tex. Const. art.

**Human Written** | 7 Words | High Confidence

VI, § 1(a)(4); S.J.R.

**Human Written** | 5 Words | Medium Confidence

37, 89th Leg., R.S.

**Human Written** | 1 Words | Low Confidence

(2025).

**AI** | 47 Words | High Confidence

That amendment postdated the alleged conduct and does not supply the governing qualification for the November 5, 2024 election. The citizenship requirement applicable on that date arose from article VI, § 2(a), and the Election Code. Procedural Posture The original indictment was returned on September 10, 2026.

**AI** | 4 Words | Low Confidence

ECF No. 1. Mr.

AI | 20 Words | High Confidence

Bhengura made his initial appearance on September 14, 2026, and Nicole Knox was substituted as counsel on September 18, 2026.

AI | 4 Words | Medium Confidence

ECF Nos. 15–16.

AI | 20 Words | High Confidence

The Scheduling Order established September 28, 2026, as the pretrial-motion deadline and initially set trial for October 19, 2026.

AI | 14 Words | Medium Confidence

ECF No. 13 ¶¶ 1, 3. The district court issued Cox on October 1, 2026.

AI | 9 Words | High Confidence

The Superseding Indictment was returned on October 7, 2026.

AI | 3 Words | Medium Confidence

ECF No. 32.

AI | 8 Words | Low Confidence

The Court reset trial for October 23, 2026.

**AI** | 2 Words | Low Confidence

ECF No.

**AI** | 1 Words | Low Confidence

37.

**Human Written** | 7 Words | Low Confidence

Undersigned counsel appeared on October 19, 2026.

**Human Written** | 3 Words | Medium Confidence

ECF No. 40.

**Human Written** | 13 Words | High Confidence

On October 20, 2026, the Court denied Defendant's unopposed motion to continue.

**Human Written** | 2 Words | Medium Confidence

ECF No.

**Human Written** | 1 Words | Low Confidence

44.

**Human Written** | 53 Words | High Confidence

LEGAL STANDARD Federal Rule of Criminal Procedure 12(b)(1) permits a party to raise before trial "any defense, objection, or request that the court can determine without a trial on the merits." A motion

**Human Written** | 53 Words | High Confidence

alleging that an indictment fails to state an offense is governed by Rule 12(b)(3)(B)(v).

**AI** | 22 Words | High Confidence

When the asserted defect presents a legal question that does not require resolution of disputed trial facts, consideration before trial is proper.

**Human Written** | 3 Words | Low Confidence

United States v.

**Human Written** | 8 Words | High Confidence

Fontenot, 665 F.3d 640, 644 (5th Cir.

**Human Written** | 16 Words | Medium Confidence

2011). Congress possesses only the powers granted by the Constitution. Bond, 572 U.S. at 854.

**Human Written** | 26 Words | High Confidence

“Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution.” United States v. Morrison, 529 U.S.

**Human Written** | 3 Words | Medium Confidence

598, 607 (2000).

AI | 40 Words | Low Confidence

Although federal statutes carry a presumption of constitutionality, a court must invalidate a statute upon a plain showing that Congress exceeded its constitutional authority. Id. The party defending the federal statute must identify a constitutionally enumerated source of legislative authority.

Human Written | 5 Words | Low Confidence

See generally United States v.

Human Written | 9 Words | High Confidence

Lopez, 514 U.S. 549, 552, 566–68 (1995).

Human Written | 18 Words | Low Confidence

An as-applied challenge contends that a statute is unconstitutional under the circumstances of the defendant's case.

Human Written | 29 Words | High Confidence

A facial challenge traditionally requires the challenger to establish that "no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S.

Human Written | 3 Words | Medium Confidence

739, 745 (1987).

AI | 29 Words | High Confidence

The Supreme Court has cautioned that the formulation in Salerno does not invariably govern every facial challenge, but that qualification does not affect the as-applied challenge presented here.

AI | 14 Words | Medium Confidence

The Court may dismiss Count Three on as-applied grounds without reaching facial invalidity.

**Human Written** | 5 Words | Medium Confidence

Cox, 2026 U.S. Dist.

**Human Written** | 6 Words | High Confidence

LEXIS 225387, at *6 n.4.

**Human Written** | 2 Words | Medium Confidence

ARGUMENT I.

**Human Written** | 19 Words | High Confidence

THE CONSTITUTION ASSIGNS THE POWER TO PRESCRIBE VOTER QUALIFICATIONS IN FEDERAL ELECTIONS TO THE STATES, NOT TO CONGRESS A.

**Human Written** | 14 Words | Low Confidence

Text The Constitution does not leave the composition of the federal electorate to Congress.

**Human Written** | 30 Words | High Confidence

For elections to the House of Representatives, “the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.” U.S.

**Human Written** | 2 Words | Medium Confidence

Const. art.

**Human Written** | 3 Words | High Confidence

I, § 2, cl.

**Human Written** | 14 Words | Low Confidence

1. The Seventeenth Amendment applies the same rule to Senate elections. Id. amend. XVII.

**Human Written** | 17 Words | High Confidence

Presidential electors are appointed by each State “in such Manner as the Legislature thereof may direct.” Id.

**Human Written** | 4 Words | Medium Confidence

art. II, § 1, cl.

**Human Written** | 15 Words | Low Confidence

2. These provisions establish a “straightforward rule” tying the federal franchise to the state franchise.

**Human Written** | 6 Words | Medium Confidence

Inter Tribal Council, 570 U.S.

**Human Written** | 3 Words | Low Confidence

at 16–17.

**AI Assisted** | 37 Words | Low Confidence

The Qualifications Clauses ensure that those qualified by a State to vote for the most numerous branch of its legislature also constitute the electorate for the House and Senate, subject to independent constitutional restrictions on state qualifications.

**Human Written** | 3 Words | Low Confidence

See Tashjian v.

**Human Written** | 11 Words | Medium Confidence

Republican Party of Connecticut, 479 U.S. 208, 225–27 (1986).

**Human Written** | 49 Words | High Confidence

The Elections Clause provides: The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [sic] Senators.

**Human Written** | 2 Words | Medium Confidence

U.S.

**Human Written** | 5 Words | Low Confidence

Const. art. I, § 4, cl.

**Human Written** | 1 Words | Low Confidence

1.

**AI** | 8 Words | Medium Confidence

The Clause authorizes procedural regulation of congressional elections.

**AI** | 26 Words | High Confidence

Its reach includes matters such as notices, registration procedures, supervision of voting, protection of voters, prevention of fraud and corrupt practices, vote counting, and election returns.

**AI** | 6 Words | Low Confidence

Smiley v. Holm, 285 U.S.

**AI** | 15 Words | Medium Confidence

355, 366 (1932); see also Cook v. Gralike, 531 U.S. 510, 523–24 (2001).

**AI** | 30 Words | High Confidence

That procedural authority permits Congress to establish “a complete code for congressional elections,” Smiley, 285 U.S. at 366, but it does not authorize Congress to prescribe who may vote.

**AI** | 8 Words | Medium Confidence

Inter Tribal Council, 570 U.S. at 16.

AI | 22 Words | High Confidence

As the Court explained, “[o]ne cannot read the Elections Clause as treating implicitly what these other constitutional provisions regulate explicitly.” Id.

AI | 2 Words | Medium Confidence

at 17.

AI | 23 Words | High Confidence

The Clause is a grant of authority to issue procedural regulations, not a power to dictate electoral outcomes or evade other constitutional restraints.

AI | 5 Words | Medium Confidence

U.S. Term Limits, Inc.

AI | 1 Words | Low Confidence

v.

AI | 4 Words | Medium Confidence

Thornton, 514 U.S.

AI | 91 Words | High Confidence

779, 833–34 (1995). The same structural principle underlies Powell v. McCormack, 395 U.S. 486, 522, 548 (1969), and U.S. Term Limits, 514 U.S. at 787–98, 827: when the Constitution fixes qualifications for federal office, neither Congress nor the States may add new qualifications. Here, the Constitution fixes the qualifications of the congressional electorate by reference to state law. The Elections Clause cannot be read to confer by implication the authority over voter qualifications that the Qualifications Clauses address expressly. See Inter Tribal Council, 570 U.S.

AI | 11 Words | Low Confidence

at 16–17; cf. Bittner v. United States, 598 U.S.

AI | 15 Words | Medium Confidence

85, 94 (2023) (applying the traditional inference that expressly enumerating some items can exclude others).

AI | 1 Words | Low Confidence

B.

AI | 40 Words | High Confidence

Drafting History and the Framers' Explanation The Convention considered and rejected a national rule of suffrage. The Committee of Detail's draft tied the federal franchise to state voter qualifications, and a proposal to restrict the franchise to freeholders failed.

AI | 16 Words | Low Confidence

See 2 The Records of the Federal Convention of 1787 201–10 (Max Farrand ed., 1911).

**Human Written** | 27 Words | Medium Confidence

Madison explained the resulting allocation to the ratifying public: The definition of the right of suffrage is very justly regarded as a fundamental article of republican government.

**Human Written** | 32 Words | High Confidence

It was incumbent on the convention, therefore, to define and establish this right in the Constitution. To have left it open for the occasional regulation of the Congress, would have been improper.

**Human Written** | 6 Words | Medium Confidence

The Federalist No. 52 (James Madison).

**Human Written** | 16 Words | High Confidence

Hamilton likewise explained that “[t]he qualifications of the persons who may choose or be chosen .

**Human Written** | 3 Words | Low Confidence

. .

**Human Written** | 16 Words | High Confidence

are defined and fixed in the Constitution, and are unalterable by the legislature.” The Federalist No.

**Human Written** | 17 Words | Medium Confidence

60 (Alexander Hamilton). The Supreme Court relied on that explanation in concluding that “[p]rescribing voter qualifications .

**Human Written** | 3 Words | Low Confidence

. .

**Human Written** | 40 Words | High Confidence

'forms no part of the power to be conferred upon the national government'" by the Elections Clause, which is "expressly restricted to the regulation of the times, the places, and the manner of elections." Inter Tribal Council, 570 U.S.

**Human Written** | 7 Words | Medium Confidence

at 16–17 (quoting The Federalist No.

**AI** | 1 Words | Low Confidence

60).

**AI** | 33 Words | Medium Confidence

Historical practice confirms that citizenship was not invariably a qualification imposed by state law. During portions of the nineteenth and early twentieth centuries, several States and territories permitted some noncitizen inhabitants to vote.

**Human Written** | 3 Words | Low Confidence

See Jamin B.

**Human Written** | 16 Words | High Confidence

Raskin, Legal Aliens, Local Citizens: The Historical, Constitutional and Theoretical Meanings of Alien Suffrage, 141 U.

**Human Written** | 9 Words | Medium Confidence

Pa. L. Rev. 1391, 1397–1417 (1993); Gerald M.

**Human Written** | 13 Words | High Confidence

Rosberg, Aliens and Equal Protection: Why Not the Right to Vote?, 75 Mich.

**Human Written** | 2 Words | Low Confidence

L. Rev.

**Human Written** | 4 Words | Low Confidence

1092, 1095–97 (1977).

**Human Written** | 9 Words | Low Confidence

The Supreme Court acknowledged this history in Minor v.

**Human Written** | 23 Words | Low Confidence

Happersett: "citizenship has not in all cases been made a condition precedent to the enjoyment of the right of suffrage." 88 U.S.

**Human Written** | 2 Words | Low Confidence

(21 Wall.)

AI | 3 Words | Low Confidence

162, 177 (1875).

AI | 13 Words | Medium Confidence

That history does not establish that noncitizens possess a constitutional right to vote.

AI | 14 Words | High Confidence

It does show that state law historically determined whether citizenship was a voting qualification.

AI | 1 Words | Low Confidence

C.

AI | 29 Words | High Confidence

Precedent: Minor, Inter Tribal Council, Oregon v. Mitchell, and Cox First, the Supreme Court has repeatedly recognized that States prescribe voter qualifications, subject to restrictions imposed by the Constitution.

AI | 7 Words | Low Confidence

See Minor, 88 U.S. (21 Wall.)

AI | 23 Words | Low Confidence

at 170–78; Pope v. Williams, 193 U.S. 621, 632–33 (1904); Harper v. Virginia State Board of Elections, 383 U.S.

AI | 13 Words | Low Confidence

663, 665–66 (1966); Inter Tribal Council, 570 U.S. at 16–17.

AI | 44 Words | High Confidence

Those decisions do not grant States unrestricted authority: the Fourteenth Amendment and the specific voting-rights amendments constrain the qualifications States may impose. But the existence of federal constitutional restrictions on state qualifications does not transfer the underlying power to prescribe qualifications to Congress.

AI | 7 Words | Medium Confidence

Second, Oregon v. Mitchell, 400 U.S.

AI | 31 Words | High Confidence

112 (1970), does not establish a general congressional power to set voter qualifications. Mitchell upheld, by a fragmented vote, a federal law lowering the voting age to eighteen in federal elections.

AI | 1 Words | Low Confidence

Id.

AI | 8 Words | Medium Confidence

at 117–18. No rationale commanded a majority.

AI | 27 Words | High Confidence

Justice Black relied in part on congressional authority over federal elections, while four Justices rejected the proposition that the Elections Clause empowers Congress to prescribe voter qualifications.

**AI** | 2 Words | Low Confidence

See id.

**AI** | 8 Words | Medium Confidence

at 119–24 (opinion of Black, J.); id.

**AI** | 13 Words | Low Confidence

at 209–13 (Harlan, J., concurring in part and dissenting in part); id.

**Human Written** | 30 Words | Low Confidence

at 287–92 (Stewart, J., joined by Burger, C.J., and Blackmun, J., concurring in part and dissenting in part). Four other Justices relied on the Fourteenth Amendment. See id.

**Human Written** | 52 Words | High Confidence

at 229–81 (Brennan, White, and Marshall, JJ., concurring in part and dissenting in part); id. at 135–44 (Douglas, J., concurring in part and dissenting in part). Justice Douglas, although resting on the Fourteenth Amendment, also took the position that the Elections Clause does not empower Congress to regulate voter qualifications.

**Human Written** | 1 Words | Low Confidence

Id.

**Human Written** | 4 Words | Medium Confidence

at 143 (Douglas, J.).

**Human Written** | 41 Words | High Confidence

The Supreme Court later described Mitchell as a decision in which "[f]ive Justices took the position that the Elections Clause did not confer upon Congress the power to regulate voter qualifications in federal elections." Inter Tribal Council, 570 U.S.

**Human Written** | 4 Words | Low Confidence

at 16 n.8.

**AI** | 49 Words | High Confidence

Because Mitchell lacked a majority rationale, its precedential force must be assessed under Marks v. United States, which treats the Court's holding as the position taken by the Justices who concurred in the judgment on the narrowest grounds when one opinion is a logical subset of broader opinions.

**AI** | 6 Words | Low Confidence

430 U.S. 188, 193 (1977).

**AI** | 38 Words | High Confidence

At most, Mitchell sustains Congress's authority to regulate the voting age in federal elections under the constitutional theories accepted by the controlling concurrence or concurrences; it does not establish a general power to prescribe other voter qualifications.

**AI** | 7 Words | Low Confidence

See Inter Tribal Council, 570 U.S.

**Human Written** | 4 Words | Low Confidence

at 16 n.8.

**Human Written** | 45 Words | High Confidence

Justice Harlan's textual observation therefore remains pertinent: "Surely nothing in these provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress." Mitchell, 400 U.S. at 210 (Harlan, J., concurring in part and dissenting in part).

**AI** | 13 Words | Low Confidence

Third, Inter Tribal Council resolved the distinction between election procedure and voter qualifications.

**AI** | 36 Words | High Confidence

The Court held that the Elections Clause authorized Congress to prescribe a federal voter-registration form and that the federal form requirement preempted Arizona's additional documentary-proof-of-citizenship requirement for applicants using that form.

**AI** | 6 Words | Medium Confidence

570 U.S. at 8–15.

**AI** | 19 Words | High Confidence

But the Court emphasized that the Elections Clause regulates the mechanics of federal elections, not the qualifications of voters.

**AI** | 1 Words | Low Confidence

Id.

**AI** | 3 Words | Medium Confidence

at 16–17.

**AI** | 25 Words | Low Confidence

It further explained that serious constitutional concerns would arise if federal law prevented a State from obtaining information necessary to enforce its voter qualifications. Id.

**AI** | 3 Words | Medium Confidence

at 17–18.

**AI** | 61 Words | High Confidence

The decision thus rested on the distinction between Congress's authority over registration procedure and the States' authority to establish voting requirements, subject to constitutional limitations. Fourth, Cox applied that distinction to § 611. The district court concluded that the statute "dictates 'who may vote'" rather than how an election is conducted and therefore exceeds the authority granted by the Elections Clause.

**AI** | 19 Words | Low Confidence

Cox, 2026 U.S. Dist. LEXIS 225387, at *24–27 (quoting Inter Tribal Council, 570 U.S. at 16).

**AI** | 18 Words | High Confidence

It also rejected reliance on Congress's more general immigration authority because the Constitution specifically addresses voter qualifications.

**AI** | 1 Words | Low Confidence

Id.

AI | 3 Words | Medium Confidence

at *27–35.

AI | 44 Words | High Confidence

Cox is a nonprecedential district-court decision, and the Government filed a notice of appeal on October 2, 2026. No appellate disposition had issued as of October 21, 2026. The decision is cited only for the persuasiveness of its reasoning, not as binding authority.

AI | 1 Words | Low Confidence

II.

AI | 49 Words | High Confidence

SECTION 611 PRESCRIBES A VOTER QUALIFICATION; IT DOES NOT REGULATE THE TIMES, PLACES, OR MANNER OF ELECTIONS Section 611 does not prescribe when an election will occur, where voting will take place, how voters will register, how ballots will be cast or counted, or what procedures will prevent fraud.

AI | 29 Words | Low Confidence

It provides that “any alien” may not vote in an election held wholly or partly to elect a candidate for specified federal offices. 18 U.S.C. § 611(a).

AI | 25 Words | High Confidence

The prohibition turns exclusively on the voter’s status. It therefore determines who may vote, not how voting occurs. The statutory exception confirms that distinction.

AI | 55 Words | Medium Confidence

Section 611 does not apply if: (1) an election is held partly for a nonfederal purpose; (2) state or local law authorizes aliens to vote

AI | 55 Words | Medium Confidence

for that purpose; and (3) the voting process is structured so that an alien may vote for the authorized nonfederal purpose but cannot vote for a candidate for federal office.

AI | 4 Words | Low Confidence

18 U.S.C.

AI | 4 Words | Medium Confidence

§ 611(a)(1)–(3).

AI | 47 Words | High Confidence

Congress thus recognized that state or local law may authorize noncitizens to vote for nonfederal purposes while independently prohibiting those same voters from voting for federal offices. As Cox reasoned, this exception demonstrates that § 611 regulates the composition of the federal electorate itself. Cox, 2026 U.S.

AI | 1 Words | Medium Confidence

Dist.

AI | 84 Words | High Confidence

LEXIS 225387, at *26–27. The statute also differs from federal laws directed at fraud, intimidation, multiple voting, or corruption. Congress has enacted laws prohibiting voting more than once in certain federal elections, 52 U.S.C. § 10307(e); knowingly procuring or submitting materially false voterregistration applications or ballots in covered federal elections, 52 U.S.C. § 20511(2); intimidating voters, 18 U.S.C. § 594; and conspiring to injure or intimidate citizens in the exercise of federally protected rights, 18 U.S.C.

AI | 1 Words | Medium Confidence

§ 241.

AI | 39 Words | High Confidence

The Supreme Court has long recognized federal authority to protect federal elections and the exercise of federally secured voting rights against violence, fraud, and corruption. See Ex parte Yarbrough, 110 U.S. 651, 657–67 (1884); United States v.

AI | 4 Words | Medium Confidence

Classic, 313 U.S.

AI | 144 Words | High Confidence

299, 315–21 (1941). Section 611, however, does not require fraud, intimidation, corruption, multiple voting, or a false statement. It criminalizes the act of voting by a person whom Congress has deemed ineligible based on alienage. Counts One and Two separately invoke 18 U.S.C. § 1015(f), which addresses knowingly false claims of citizenship made to register to vote or to vote. Count Three rests solely on § 611's status-based prohibition. Accordingly, the Government cannot sustain § 611 under the Elections Clause merely by characterizing it as an election-integrity measure. The constitutional inquiry turns on what the statute does, and § 611 prescribes a qualification. That Texas independently imposed a citizenship qualification in 2024 does not alter the allocation of constitutional authority. A question about which sovereign possesses a power is not resolved by observing that the sovereigns presently impose the same rule.

AI | 3 Words | Medium Confidence

See U.S.

AI | 135 Words | High Confidence

Term Limits, 514 U.S. at 800–05. Section 611 would continue to prohibit a noncitizen from voting for federal office even if applicable state law authorized that person to vote for the State's most numerous legislative branch. Its operation therefore does not depend on state

AI | 135 Words | High Confidence

qualifications; it creates and enforces an independent federal qualification. Nor does Texas's 2025 constitutional amendment determine the rule applicable to the alleged November 5, 2024 vote. At that time, Texas already required United States citizenship through article VI, § 2(a), of its constitution and sections 11.002(a)(2) and 13.001(a)(2) of its Election Code. The later amendment added noncitizens to the constitution's express list of persons prohibited from voting, but it did not retroactively create the citizenship qualification governing the 2024 election.

AI | 1 Words | Medium Confidence

III.

AI | 27 Words | High Confidence

NO OTHER ENUMERATED POWER SUPPORTS SECTION 611 A. The Immigration and Foreign-Affairs Powers Congress has authority "[t]o establish an uniform Rule of Naturalization." U.S.

AI | 2 Words | Medium Confidence

Const. art.

AI | 3 Words | High Confidence

I, § 8, cl.

AI | 1 Words | Medium Confidence

4.

AI | 81 Words | High Confidence

Congress also possesses substantial authority concerning the admission, exclusion, and removal of noncitizens. But those powers do not

AI | 81 Words | High Confidence

automatically authorize every federal law that classifies persons by alienage. The challenged statute still must constitute a valid exercise of an enumerated power and remain consistent with the Constitution's specific allocation of authority. Congress has addressed unlawful voting through immigration law. An alien who votes in violation of federal, state, or local law may be inadmissible or deportable, subject to statutory exceptions.

AI | 4 Words | Medium Confidence

8 U.S.C.

AI | 174 Words | High Confidence

§§ 1182(a)(10)(D), 1227(a)(6). Those provisions regulate immigration consequences and predicate those consequences on a vote that violates independently applicable law. Section 611 is different: it supplies the substantive voting prohibition itself. The Supreme Court has rejected efforts to use a broad general power to circumvent a more specific constitutional limitation. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 72–73 (1996) (holding that Article I cannot be used to evade the Eleventh Amendment's restriction on federal judicial power); Haaland v. Brackeen, 599 U.S. 255, 275–76 (2023) (reaffirming that congressional authority, although broad in its proper domain, remains constitutionally limited). Seminole Tribe remains controlling on that proposition, although later decisions have distinguished its sovereign-immunity rule when Congress legislates under a constitutional provision adopted after the Eleventh Amendment. See, e.g., Central Virginia Community College v. Katz, 546 U.S. 356, 363–79 (2006). The distinction does not affect the principle invoked here: a general grant of federal authority cannot erase a specific constitutional allocation.

AI | 17 Words | Medium Confidence

The Constitution specifically addresses the qualifications of electors for Congress and the States' appointment of presidential electors.

AI | 4 Words | Low Confidence

U.S. Const. art.

AI | 10 Words | Medium Confidence

I, § 2, cl. 1; amend. XVII; art. II, § 1, cl.

AI | 1 Words | Low Confidence

2.

AI | 33 Words | High Confidence

Congress may regulate a noncitizen's immigration status based on unlawful voting, but it may not use its naturalization or immigration powers to assume authority over voter qualifications that the Constitution assigns elsewhere.

AI | 28 Words | Medium Confidence

Cox reached the same conclusion, reasoning that "[f]oundational constitutional limits do not give way, even to capacious general provisions of enumerated congressional power." Cox, 2026 U.S.

AI | 1 Words | Low Confidence

Dist.

AI | 5 Words | Medium Confidence

LEXIS 225387, at *34– 35.

AI | 7 Words | High Confidence

Campaign-finance decisions do not establish otherwise.

AI | 2 Words | Medium Confidence

Bluman v.

AI | 21 Words | High Confidence

Federal Election Commission upheld the federal prohibition on campaign contributions and independent expenditures by foreign nationals against a First Amendment challenge.

AI | 3 Words | Medium Confidence

800 F. Supp.

AI | 124 Words | High Confidence

2d 281, 283, 285–92 (D.D.C. 2011) (three-judge court), summarily aff'd, 565 U.S. 1104 (2012). A summary affirmance binds lower courts as to the judgment and issues necessarily decided, but it does not adopt every statement in the lower court's opinion. See Mandel v. Bradley, 432 U.S. 173, 176 (1977) (per curiam). Bluman did not decide whether Congress may prescribe voter qualifications under the Elections Clause or the immigration power. It addressed political spending by foreign nationals, not eligibility to cast a ballot. Similarly, Burroughs v. United States sustained federal campaign-finance disclosure requirements as measures protecting presidential elections from corruption. 290 U.S. 534, 544–48 (1934). Neither decision holds that Congress may define the electorate.

AI | 1 Words | Medium Confidence

B.

AI | 83 Words | High Confidence

The Enforcement Clauses of the Suffrage Amendments The Fourteenth, Fifteenth, Nineteenth, Twenty-Fourth, and Twenty-Sixth Amendments restrict state action affecting the franchise and authorize Congress to enforce their substantive guarantees by appropriate legislation. Congress's enforcement authority is remedial rather than a power to redefine constitutional rights. City of Boerne v. Flores, 521 U.S. 507, 519–20, 527–36 (1997). Enforcement legislation must exhibit congruence and proportionality between

**AI** | 83 Words | High Confidence

the constitutional injury to be prevented or remedied and the statutory means adopted.

**AI** | 1 Words | Medium Confidence

Id.

**AI** | 61 Words | High Confidence

at 520. Earlier decisions recognizing broad enforcement authority must be read consistently with City of Boerne and its progeny. See Katzenbach v. Morgan, 384 U.S. 641, 648–58 (1966). Morgan upheld legislation expanding access to the ballot and expressly stated that Congress's enforcement power did not authorize legislation that would "restrict, abrogate, or dilute" the Fourteenth Amendment's guarantees.

**AI** | 1 Words | Medium Confidence

Id.

**AI** | 142 Words | High Confidence

at 651 n.10. Likewise, South Carolina v. Katzenbach sustained provisions of the Voting Rights Act as appropriate enforcement of the Fifteenth Amendment, 383 U.S. 301, 308, 324–37 (1966), but its treatment of the Act's coverage formula was later abrogated by Shelby County v. Holder, 570 U.S. 529, 551–57 (2013). The general proposition relevant here—that Congress may enact appropriate remedial legislation enforcing constitutional voting guarantees—was not displaced. Section 611 does not remedy state discrimination forbidden by any of those amendments. It does not protect access to the ballot based on race, sex, failure to pay a poll tax, age for citizens eighteen or older, or another protected constitutional interest. Instead, it contracts the class of persons permitted to vote by imposing alienage as an independent federal disqualification. The enforcement clauses do not authorize that result.

AI | 4 Words | Medium Confidence

And because Oregon v.

AI | 37 Words | High Confidence

Mitchell produced no majority rationale, it cannot support a broader proposition that Congress may use the Fourteenth Amendment to prescribe voter qualifications unrelated to the age qualification at issue there. See Inter Tribal Council, 570 U.S.

AI | 4 Words | Medium Confidence

at 16 n.8.

AI | 1 Words | Low Confidence

C.

AI | 30 Words | High Confidence

The Necessary and Proper Clause The Necessary and Proper Clause authorizes Congress “[t]o make all Laws which shall be necessary and proper for carrying into Execution” its enumerated powers.

AI | 4 Words | Low Confidence

U.S. Const. art.

AI | 4 Words | Medium Confidence

I, § 8, cl. 18.

AI | 22 Words | High Confidence

A law must be rationally related to implementing an enumerated power and must remain consistent with the Constitution's text and structure.

AI | 3 Words | Medium Confidence

United States v.

AI | 14 Words | High Confidence

Comstock, 560 U.S. 126, 133–35 (2010); McCulloch v. Maryland, 17 U.S.

AI | 2 Words | Medium Confidence

(4 Wheat.)

AI | 90 Words | High Confidence

316, 421–23 (1819). Section 611 fails that test. It does not implement Congress's procedural authority over the times, places, and manner of congressional elections; it prescribes who may vote. Nor is an independent federal voting qualification necessary to implement Congress's immigration authority. Congress can attach immigration consequences to voting that violates otherwise applicable law, as it has done in 8 U.S.C. §§ 1182(a)(10)(D) and 1227(a)(6), without creating a federal voter qualification. The word "proper" also requires consistency with the federal structure.

AI | 3 Words | Medium Confidence

See Printz v.

AI | 49 Words | High Confidence

United States, 521 U.S. 898, 923–24 (1997). Although Printz concerned federal commandeering of state executive officers, its Necessary and

AI | 49 Words | High Confidence

Proper Clause analysis confirms that a measure inconsistent with the Constitution's allocation of governmental authority is not rendered proper merely because it might facilitate a federal objective.

AI | 2 Words | Medium Confidence

See id.

AI | 48 Words | High Confidence

at 923–35. Likewise, the controlling opinion in National Federation of Independent Business v. Sebelius explained that the Clause does not confer a "great substantive and independent power" beyond those enumerated. 567 U.S. 519, 559–60 (2012) (opinion of Roberts, C.J.) (quoting McCulloch, 17 U.S.

AI | 4 Words | Medium Confidence

(4 Wheat.) at 411).

AI | 90 Words | High Confidence

Because Chief Justice Roberts's opinion supplied the narrowest rationale supporting the judgment on the Commerce and Necessary and Proper Clause issues, the brief relies on it with that qualification rather than treating every aspect of the fractured decision as an unqualified majority holding. The power to determine membership in the electorate is substantive, not merely incidental. The Necessary and Proper Clause does not authorize Congress to acquire that power when the Constitution expressly links the congressional electorate to state qualifications and gives Congress only procedural authority over congressional elections.

AI | 1 Words | Low Confidence

IV.

**Human Written** | 8 Words | Low Confidence

SECTION 611 IS UNCONSTITUTIONAL AS APPLIED TO MR.

**Human Written** | 10 Words | Medium Confidence

BHENGURA, AND KNIGHT AND KIMANI DO NOT HOLD OTHERWISE A.

**Human Written** | 26 Words | Low Confidence

As-Applied Challenge Count Three alleges that Mr. Bhengura, an alien and lawful permanent resident, voted in Tarrant County in the November 5, 2024 general election.

**AI** | 12 Words | Medium Confidence

Texas law determined whether he was qualified to vote in that election.

**AI** | 21 Words | High Confidence

At the time of the alleged conduct, the Texas Constitution required a qualified voter to be a United States citizen, Tex.

**AI** | 2 Words | Medium Confidence

Const. art.

**AI** | 13 Words | High Confidence

VI, § 2(a), and the Texas Election Code imposed the same requirement, Tex.

AI | 1 Words | Medium Confidence

Elec.

AI | 9 Words | High Confidence

Code §§ 11.002(a)(2), 13.001(a)(2).

AI | 18 Words | Medium Confidence

Texas also criminalized voting in an election in which the person knows that he is ineligible to vote.

AI | 1 Words | Low Confidence

Id.

AI | 5 Words | Low Confidence

§ 64.012(a)(1), (b).

AI | 146 Words | High Confidence

Texas therefore possessed and exercised its authority to prescribe and enforce the qualification at issue. Section 611 did something different: it independently declared that Mr. Bhengura was ineligible to vote for federal office because of his alienage and subjected him to a federal criminal penalty for doing so. The statute did not incorporate Texas's voter qualifications or punish the violation of state election law. It imposed Congress's own qualification on the federal electorate. That distinction controls the as-applied challenge. The issue is not whether Texas could prohibit the alleged conduct; it could and did. The issue is whether Congress possessed independent constitutional authority to prescribe the same qualification and make its violation a federal offense. Because the Constitution links the congressional electorate to state voter qualifications and grants Congress procedural authority over federal elections, § 611 exceeds Congress's authority as applied to Mr.

AI | 1 Words | Medium Confidence

Bhengura.

AI | 12 Words | High Confidence

The constitutional defect does not depend on the particular category of Mr.

AI | 28 Words | Medium Confidence

Bhengura’s immigration status. Cox involved a defendant charged with voting while knowing she was not a United States citizen, whereas Mr. Bhengura is a lawful permanent resident.

AI | 18 Words | High Confidence

In both circumstances, § 611 operates in the same way: it treats alienage itself as a federal voting disqualification.

Human Written | 12 Words | Low Confidence

Cox, 2026 U.S. Dist. LEXIS 225387, at *3–4, *24–35.

AI | 43 Words | High Confidence

The distinction between those immigration classifications therefore does not cure the asserted defect. As applied to Mr. Bhengura, § 611 exercises authority over voter qualifications that the Constitution does not grant Congress, and Count Three fails to state an offense against the United States.

**AI Assisted** | 41 Words | Medium Confidence

Facial Challenge Section 611 applies whenever an alien votes in an election held wholly or partly to elect a candidate for one of the federal offices specified in the statute, except under the limited conditions stated in § 611(a)(1)–(3).

**AI** | 35 Words | High Confidence

In each application, liability turns on the voter's alienage and participation in the federal portion of the election. The statute therefore operates as a federal voter qualification rather than a regulation of election procedure.

**AI** | 8 Words | Low Confidence

Under the traditional formulation in United States v.

**Human Written** | 25 Words | Low Confidence

Salerno, a facial challenge requires the challenger to establish that "no set of circumstances exists under which the Act would be valid." 481 U.S.

**Human Written** | 3 Words | Low Confidence

739, 745 (1987).

**AI** | 98 Words | High Confidence

That formulation has not been applied mechanically in every constitutional context, and Salerno should not be read more broadly than necessary. Here, however, § 611's operative rule is status-based in every application: an alien may not vote for federal office because Congress has declared that person ineligible. Because every application depends on the same asserted exercise of authority over voter qualifications, the statute is facially invalid under the traditional standard. The Court need not reach the facial challenge to dispose of Count Three. It may instead hold § 611 unconstitutional as applied to the conduct alleged against Mr.

**AI** | 1 Words | Medium Confidence

Bhengura.

**AI** | 12 Words | High Confidence

Cox followed that narrower course and expressly declined to decide facial invalidity.

**AI** | 5 Words | Low Confidence

Cox, 2026 U.S. Dist.

**AI** | 7 Words | Medium Confidence

LEXIS 225387, at *6 n.4. Mr.

**AI** | 21 Words | High Confidence

Bhengura raises the facial challenge to preserve it while requesting dismissal on the narrower as-applied ground in the first instance.

**Human Written** | 1 Words | Low Confidence

C.

**Human Written** | 18 Words | Low Confidence

Knight and Kimani Neither United States v. Knight, 490 F.3d 1268 (11th Cir. 2007), nor Kimani v.

AI | 7 Words | Low Confidence

Holder, 695 F.3d 666 (7th Cir.

AI | 10 Words | Medium Confidence

2012), decided whether Congress possessed constitutional authority to enact § 611.

AI | 48 Words | High Confidence

In Knight, the Eleventh Circuit considered whether § 611 required proof that the defendant knew his conduct was unlawful and whether the statute was unconstitutionally vague without such a requirement. 490 F.3d at 1270–72. The court rejected those arguments and treated § 611 as a general-intent offense.

AI | 1 Words | Medium Confidence

Id.

AI | 26 Words | High Confidence

It did not consider an Elections Clause challenge, the constitutional allocation of authority over voter qualifications, or whether the immigration or naturalization powers support the statute.

AI | 18 Words | Medium Confidence

As Cox correctly observed, “Knight did not present the issue the Court confronts here.” Cox, 2026 U.S.

AI | 1 Words | Low Confidence

Dist.

AI | 6 Words | Medium Confidence

LEXIS 225387, at *5 n.2.

AI | 59 Words | High Confidence

Kimani arose in removal proceedings and addressed whether an alien's voting conduct rendered him inadmissible under 8 U.S.C. § 1182(a)(10)(D). 695 F.3d at 668–70. In resolving that immigration question, the Seventh Circuit considered the elements and application of § 611; it did not decide whether Congress had constitutional authority to enact the statute.

AI | 6 Words | Medium Confidence

Id. at 670–71. Fitzpatrick v.

AI | 30 Words | High Confidence

Sessions likewise arose from immigration proceedings and addressed the application of the unlawful-voting ground of inadmissibility, not Congress's enumerated powers. 847 F.3d 913, 915–17 (7th Cir.

AI | 1 Words | Medium Confidence

2017).

AI | 58 Words | High Confidence

A decision is not binding precedent on a legal issue that was neither raised nor decided. Accordingly, the assumed validity of § 611 in Knight, Kimani, and Fitzpatrick does not resolve the distinct constitutional question presented here. Those decisions remain relevant to the statutory and immigration issues they actually adjudicated, but they should not be extended beyond their holdings.

AI | 17 Words | Medium Confidence

No Fifth Circuit decision identified by Defendant has decided whether Congress possesses constitutional authority to enact § 611.

AI | 25 Words | Low Confidence

D. The Pending Appeal in Cox The Government filed a notice of appeal from the district court's order in Cox on October 2, 2026.

AI | 10 Words | Medium Confidence

As of October 21, 2026, no appellate disposition had issued.

AI | 57 Words | High Confidence

The district court's opinion is therefore neither binding precedent nor a final appellate resolution of § 611's constitutionality. Defendant relies on it only as persuasive authority. The pending appeal does not prevent this Court from resolving the legal question before it. Count Three requires this Court to determine whether the charged statute constitutionally applies to Mr.

AI | 1 Words | Medium Confidence

Bhengura.

AI | 54 Words | High Confidence

The existence of a pending appeal in another circuit neither controls that determination nor diminishes the Court's obligation to decide a properly presented challenge. If the Court dismisses Count Three, federal law permits the Government to seek appellate review of the dismissal, subject to the statutory limitations on Government appeals in criminal cases.

AI | 6 Words | Medium Confidence

See 18 U.S.C. § 3731.

AI | 25 Words | High Confidence

The prospect of appellate review is not a reason to try Mr. Bhengura under a statute that this Court concludes Congress lacked authority to enact.

AI | 55 Words | Low Confidence

V. THE MOTION IS TIMELY OR, ALTERNATIVELY, GOOD CAUSE SUPPORTS LEAVE TO FILE IT Defendant maintains that a challenge to Congress's power to enact the charged statute is a challenge to whether the indictment charges an offense against the United States, which may be raised "at any time while the case is pending." Fed.

Human Written | 1 Words | Low Confidence

R.

Human Written | 5 Words | Low Confidence

Crim. P. 12(b)(2).

AI | 53 Words | Medium Confidence

To the extent the Court instead treats this motion as one under Federal Rule of Criminal Procedure 12(b)(3)(B)(v), Rule 12(c)(1) permits the Court to set a deadline for pretrial motions, and Rule 12(c)(3) permits consideration of an untimely motion if the movant shows good cause.

AI | 4 Words | Low Confidence

Good cause exists here.

AI | 12 Words | Low Confidence

The Scheduling Order established September 28, 2026, as the pretrial-motion deadline.

**Report Truncated**

This report has been limited to 50 pages. For the complete analysis, please view the full report online.

# Exhibit B

Pangram. Pangram 4.1

# AI Detection Report for Defendant Khalwinder Singh Bhengura moves under 28...

Nov 2, 2026 | 697 Words | Pangram 4.1

## Summary

We believe that this text is a mix of AI and human-written content.

### Authorship Breakdown




| | |
|---|---|
| 63 % of the document | AI Generated |
| 0.1 % of the document | AI Assisted |
| 37 % of the document | Human Written |

### Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**AI** | 72 Words | High Confidence

Defendant Khalwinder Singh Bhengura moves under 28 U.S.C. § 753(b), (f), Federal Rule of Criminal Procedure 33, and the Court's supervisory authority for expedited transcription of all proceedings necessary to evaluate and present post-verdict relief1 . The jury returned guilty verdicts on Counts One and Three and an acquittal on Count Two on October 27, 2026. ECF Nos. 66, 72. Sentencing is set for February 11, 2027. ECF No.

**AI** | 1 Words | Medium Confidence

73.

**AI** | 165 Words | High Confidence

Defendant remains detained. Defendant requests an order directing the court reporter to begin expedited transcription immediately, advise counsel of the earliest feasible delivery date and

Pangram.

AI | 165 Words | High Confidence

cost, and provide rolling delivery as portions are completed. Defendant will arrange payment at applicable rates unless otherwise ordered upon an established statutory basis. ECIFIC TRANSCRIPTS AND RECORDS The request for an emergent and expedited transcript encompasses all on-the-record trial before a jury proceedings on October 23, 26, and 27, 20262 , including voir dire, opening statements, testimony, objections, bench conferences recorded by the reporter, offers of proof, rulings, closing arguments, the charge conference and instructions, jury questions and responses, verdict, and post-verdict detention commentary and orders. While also urgent, but secondary priority, Defendant Bhengura also requests an expedited copy of all additional pre-trial proceedings, including but not limited to the detention hearing, the show cause hearing and collateral matter hearings contemporaneous with trial outside of the presence or within the presence of the jury if reported.

AI | 43 Words | Low Confidence

This includes but is not limited to the following: 1. 09.14.26: Initial appearance, Detention hearing, and arraignment (Doc. 5, 11); and 2. 10.01.26: Show cause hearing for Attorney Knox to prove she remains in compliance with local rules (Doc.

AI | 1 Words | Medium Confidence

23).

AI | 51 Words | High Confidence

If any requested proceeding was not recorded, Defendant asks to be informed promptly. Defendant further requests preservation of the original stenographic notes, digital recordings, bench-conference audio if recorded, admitted and rejected exhibits, jury communications, and any recordings constituting the official record. The request does not demand transcription of unrecorded discussions.

AI | 1 Words | Low Confidence

III.

Pangram.

**Human Written** | 86 Words | High Confidence

GOOD CAUSE FOR EXPEDITED PRODUCTION Attorney Herrera entered an appearance with the Court as co-counsel to Attorney Knox on 10.19.2026 for trial beginning on 10.23.2026. Doc. 23. The Court is familiar with Attorney Knox's duration of practice in the district as she appeared as trial counsel before him in 2022. The docket reflects that Attorney Herrera was forced to assume the role of lead trial counsel at the last minute when Attorney Knox's suffered a medical emergency and hospitalization.

**Human Written** | 2 Words | Medium Confidence

Doc. 40.

**Human Written** | 15 Words | High Confidence

On October 20, 2026, Attorney Herrera sought a continuance in hopes of a speedy recovery.

**Human Written** | 2 Words | Medium Confidence

Doc. 43.

**Human Written** | 25 Words | High Confidence

The Motion for Continuance was unopposed by the Government. That same day, Judge Pittman denied the Motion to Continue trial for any amount of time.

**Human Written** | 2 Words | Medium Confidence

Doc. 44.

**Human Written** | 58 Words | High Confidence

In an effort to serve the best interests of the Defendant, Attorney Herrera sought the assistance of co-counsel. On 10.22.2026, the eve of trial, Attorney Carrizales entered an appearance to assist Attorney Herrera represent the defendant to the

Pangram.

**Human Written** | 58 Words | High Confidence

best of their abilities given days notice to defend two federal felony offenses and one misdemeanor offense.

**Human Written** | 2 Words | Medium Confidence

Doc. 59.

**Human Written** | 66 Words | High Confidence

Trial began October 23 and continued October 26 and 27. During the weeks leading up to trial, the Court required Attorney Knox to show cause that she has remained a member in good standing in the Northern District of Texas since February of 2010. During trial, the Court sanctioned Mr. Herrera for which the Court cited defense attorney's objections and courtroom conduct as sanctionable conduct.

**Human Written** | 19 Words | Medium Confidence

Doc. 67. Defendant does not ask the Court to decide the merits of counsel's objections on this motion.

**AI** | 45 Words | High Confidence

The exact exchanges, objections, rulings, and context are essential to meaningful Rule 33 review and potential appellate preservation. A non-newly-discovered-evidence Rule 33 motion ordinarily must be filed within 14 days of the October 27 verdict, making November 10, 2026 the ordinary deadline.

**AI** | 4 Words | Low Confidence

Fed. R. Crim. P.

**AI** | 37 Words | High Confidence

33(b)(2), 45(a). Expedited rolling production will reduce the prejudice from counsel's inability to inspect the record before that deadline. Defendant will timely preserve Rule 33 grounds independently of any ruling on this motion.

# Exhibit C

Pangram.



# AI Detection Report for SUMMARY OF ARGUMENT Release is warranted for two...

Nov 2, 2026 | 1,551 Words | Pangram 4.1

## Summary

We believe that this text is a mix of AI and human-written content.

### Authorship Breakdown




| | |
|---|---|
| 63 % of the document | AI Generated |
| 0.1 % of the document | AI Assisted |
| 37 % of the document | Human Written |

### Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**AI** | 10 Words | Low Confidence

SUMMARY OF ARGUMENT Release is warranted for two independent reasons.

**AI** | 52 Words | Low Confidence

First, the detention mandate of § 3143(a)(1) does not reach Mr. Bhengura. By its terms, that provision excepts "a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment." Under the strict definitions and application of § 3143(a)(1), Mr.

Pangram.

AI | 39 Words | Medium Confidence

Bhengura is such an excepted person: the jury's acquittal on the second felony leaves a guideline calculation that falls in Zone A of the Sentencing Table, where "a sentence of imprisonment is not required," U.S.S.G.

Human Written | 25 Words | Low Confidence

§ 5C1.1(b), and where, for a zero-point offender, "a sentence other than a sentence of imprisonment . . . is generally appropriate," id. § 5C1.1 cmt.

Human Written | 2 Words | Low Confidence

n.9.

Human Written | 19 Words | Low Confidence

No further analysis under § 3143(a)(1) is required; the remainder of that subsection is inapplicable to this case.

Human Written | 40 Words | Low Confidence

His release is instead governed by § 3142(b) and (c), under which the Magistrate Judge has already found—with the government's agreement—that conditions of release reasonably assure his appearance and the safety of the community I. ARGUMENT A.

Human Written | 1 Words | Medium Confidence

Mr.

Pangram.

**Human Written** | 19 Words | High Confidence

Bhengura is an excepted person under § 3143(a)(1), because the applicable guideline promulgated under 28 U.S.C.

**Human Written** | 8 Words | Medium Confidence

§ 994 does not recommend a term of imprisonment.

**Human Written** | 60 Words | Low Confidence

Section 3143(a)(1) directs that a person found guilty and awaiting sentence be detained unless the court finds by clear and convincing evidence that he is not likely to flee or pose a danger. But Congress excluded one class of defendants from that mandate altogether: "a person for whom the applicable guideline promulgated pursuant to 28 U.S.C.

**Human Written** | 35 Words | Medium Confidence

994 does not recommend a term of imprisonment." 18 U.S.C. § 3143(a)(1). For such a person, § 3143(a)(1) "by its own terms does not apply in any respect," United States v.

**Human Written** | 3 Words | High Confidence

Mincey, 482 F.

**Human Written** | 5 Words | Medium Confidence

Supp. 2d 161, 163 (D.

**Human Written** | 1 Words | Low Confidence

Mass.

Pangram.

AI | 42 Words | Low Confidence

2007), and release is governed by the ordinary standards of § 3142(b) and (c), under which the court releases the defendant on personal recognizance or on the least restrictive conditions that will reasonably assure his appearance and the safety of the community.

AI | 23 Words | Medium Confidence

The mandatory-detention provision of § 3143(a)(2) is likewise inapplicable, because neither offense of conviction is described in 18 U.S.C.

AI | 25 Words | Low Confidence

§ 3142(f)(1)(A)–(C). Under the strict definitions and application of § 3143(a)(1), therefore, the presumption in favor of release applies to Mr.

AI | 22 Words | Medium Confidence

Bhengura through the statute's excepted-person clause, which Congress defined by reference to the guidelines promulgated under 28 U.S.C.

AI | 2 Words | Low Confidence

§ 994. Mr.

AI | 6 Words | Medium Confidence

Bhengura falls squarely within that definition.

**AI** | 33 Words | High Confidence

No further analysis under § 3143(a)(1) is required: once the exception applies, the remainder of the subsection—its detention mandate and its clear-andconvincing-evidence burden—has no application to this case.

**Human Written** | 18 Words | Low Confidence

The applicable guideline does not recommend imprisonment here. Count Three (§ 611) is governed by U.S.S.G.

**Human Written** | 21 Words | High Confidence

§ 2H2.1, which assigns a base offense level of 6 where the defendant "gave false information to establish eligibility to vote."

**Human Written** | 4 Words | Medium Confidence

U.S.S.G.

**Human Written** | 6 Words | High Confidence

§ 2H2.1(a)(3)(B); id.

**Human Written** | 2 Words | Medium Confidence

App. A.

**Human Written** | 29 Words | High Confidence

Count One (§ 1015(f)) is governed by the same guideline—the only guideline the statutory index lists for § 1015(f)—and likewise carries a base offense level of 6.

**Human Written** | 4 Words | Medium Confidence

U.S.S.G.

**Human Written** | 6 Words | High Confidence

§ 2H2.1(a)(3)(B); id.

**Human Written** | 1 Words | Medium Confidence

App.

**Human Written** | 38 Words | Low Confidence

A. Under the multiple-count rules that take effect November 1, 2026, and will govern at sentencing, the offense level for both counts is the highest offense level of any single count, with no added levels—here, 6.

**Human Written** | 5 Words | Medium Confidence

See U.S.S.G.

**Human Written** | 5 Words | High Confidence

§ 3D1.1(c)–(d) (eff.

**Human Written** | 4 Words | Medium Confidence

Nov. 1, 2026); id.

**Human Written** | 5 Words | High Confidence

§ 1B1.11(a), p.s.

**Human Written** | 1 Words | Low Confidence

Mr.

**Human Written** | 29 Words | High Confidence

Bhengura has no criminal history points and meets the criteria for the two-level reduction for zero-point offenders, § 4C1.1(a), yielding an adjusted offense level of 4.

**Human Written** | 16 Words | Low Confidence

The result is the same under the multiple-count rules in effect before November 1, 2026.

**Human Written** | 29 Words | Medium Confidence

Section 2H2.1(a)(3) applies to both Counts One and Three. If the two counts were grouped, the combined offense level would be 6. U.S.S.G.

**Human Written** | 5 Words | High Confidence

§§ 3D1.2, 3D1.3(a).

**Human Written** | 37 Words | Low Confidence

If they were not, each count would form a separate Group at level 6, and the two Units would add two levels, for a combined offense level of 8 before the § 4C1.1 reduction. Id. § 3D1.4.

**Human Written** | 15 Words | Low Confidence

At level 8, as at level 4, the guideline range is 0 to 6 months.

**Human Written** | 48 Words | Low Confidence

Thus, even if the Court were to impose a term of imprisonment, the minimum under the guidelines is zero days and the maximum is six months. Prison is not a required sentence, and no days of imprisonment are required even if a "term of imprisonment" is nominally ordered.

**Human Written** | 37 Words | Low Confidence

At every offense level from 1 through 8 in Criminal History Category I, the guideline range is 0 to 6 months and falls within Zone A of the Sentencing Table. U.S.S.G. ch. 5, pt.

**AI** | 1 Words | Low Confidence

A.

**AI** | 10 Words | Low Confidence

In Zone A, "a sentence of imprisonment is not required."

**AI** | 1 Words | Low Confidence

Id.

**AI** | 3 Words | Low Confidence

§ 5C1.1(b).

**AI** | 29 Words | High Confidence

For a defendant who receives the zero-point-offender adjustment and whose range is in Zone A, the Commission directs that "a sentence other than a sentence of imprisonment .

**AI** | 4 Words | Low Confidence

. . is generally appropriate." Id.

**AI** | 10 Words | Medium Confidence

§ 5C1.1 cmt. n.9; see 28 U.S.C.

**AI** | 37 Words | High Confidence

§ 994(j) (directing the Commission to ensure that the guidelines "reflect the general appropriateness of imposing a sentence other than imprisonment" on a first offender not convicted of a crime of violence or an otherwise serious offense).

**AI** | 1 Words | Low Confidence

Mr.

AI | 145 Words | High Confidence

Bhengura is accordingly eligible for a sentence of probation, home confinement, a fine (which, even at an offense level of 8, may not exceed $20,000, U.S.S.G. § 5E1.2(c)(2)–(3)), or a hybrid of those options. This array of noncustodial sentencing options is available because Congress and the Sentencing Commission have treated the offenses of conviction as administrative offenses that fall squarely within Zone A, with no imprisonment as an available sentence—precisely the category of offenses Congress excepted from pre-sentencing detention in § 3143(a)(1). A guideline that tells the sentencing court imprisonment is not required, and that a non-custodial sentence is generally appropriate, does not "recommend a term of imprisonment." The federal statutory framework does not call for presentence detention of a defendant convicted of these offenses who has never deviated from his conditions of release.

AI | 1 Words | Low Confidence

Mr.

AI | 53 Words | High Confidence

Bhengura is therefore outside § 3143(a)(1), and his release is governed by § 3142(b) and (c). Under those provisions the question is whether conditions exist that will reasonably assure his appearance and the safety of the community. The Magistrate Judge has already answered that question, and the government agreed with the answer.

AI | 4 Words | Low Confidence

Det. Hr'g Tr.

AI | 9 Words | Medium Confidence

11:22–23, 19:16–18; ECF No. 10.

AI | 32 Words | High Confidence

Nothing has occurred since then except six weeks of full compliance and a verdict that produced a guideline range beginning at zero. The Court should order release on the

AI | 32 Words | High Confidence

conditions previously imposed.

AI | 1 Words | Low Confidence

B.

AI | 47 Words | High Confidence

The possibility of immigration consequences does not justify detention. The risk that immigration authorities may later detain or remove Mr. Bhengura is not a risk that he will flee. The Bail Reform Act is concerned with a defendant's volitional flight, not with removal by the government.

AI | 3 Words | Low Confidence

United States v.

Human Written | 10 Words | Low Confidence

Ailon-Ailon, 875 F.3d 1334, 1337–39 (10th Cir.

Human Written | 4 Words | Low Confidence

2017); United States v.

AI | 23 Words | Low Confidence

Santos-Flores, 794 F.3d 1088, 1091–92 (9th Cir. 2015). In United States v. Esquivel-Bataz, 155 F.4th 491 (5th Cir.

**AI** | 46 Words | High Confidence

2025), the government did not contend that possible deportation "itself would be considered flight," and the Fifth Circuit affirmed detention because the district court had made an individualized assessment under § 3142(g) that rested on the defendant's prior felony conviction, prior deportation, and illegal reentry.

**AI** | 1 Words | Low Confidence

Id.

**AI** | 10 Words | Medium Confidence

at 492–93. None of those facts exists here. Mr.

**AI** | 43 Words | High Confidence

Bhengura has no criminal history, entered lawfully, and has never been removed. As a lawful permanent resident, he has every reason to remain in this country and to contest the consequences of these convictions through lawful process, and no detainer has been lodged.

**AI** | 10 Words | Medium Confidence

Continued detention risks punishment beyond the sentence the guidelines recommend.

**Human Written** | 23 Words | Medium Confidence

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v.

**Human Written** | 11 Words | Low Confidence

Salerno, 481 U.S. 739, 755 (1987); see also Chavez v.

AI | 13 Words | Low Confidence

State, 671 S.W.3d 775 (Tex. App.—Fort Worth 2023, no pet.)

AI | 43 Words | High Confidence

(applying the same principle in reversing an excessive pretrial bail). That principle applies with special force where, as here, the recommended range is 0 to 6 months, the range begins at zero, and the Commission has deemed a sentence without imprisonment generally appropriate.

AI | 12 Words | Low Confidence

Sentencing is set for February 11, 2027. ECF No. 73. If Mr.

AI | 57 Words | High Confidence

Bhengura remains in custody until then, he will have served approximately three and one-half months—more than half of the maximum of a range whose low end is zero— before the Court has had the opportunity to decide whether any imprisonment is warranted. That is punishment imposed before sentence, and no later ruling could undo it.

AI | 17 Words | Medium Confidence

His renewed motion for judgment of acquittal under Rule 29(c) remains to be decided as well.

# Exhibit D

Pangram. Pangram 4.1

# AI Detection Report for I. LEGAL STANDARDS Rule 29. After a guilty verdict...

Nov 2, 2026 | 3,073 Words | Pangram 4.1

## Summary

We believe that this text is a mix of AI and human-written content.

### Authorship Breakdown




63 % of the document — AI Generated

0.1 % of the document — AI Assisted

37 % of the document — Human Written

### Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**Human Written** | 1 Words | Low Confidence

I.

**Human Written** | 49 Words | Medium Confidence

LEGAL STANDARDS Rule 29. After a guilty verdict, the Court must set aside the verdict and enter a judgment of acquittal when the evidence could not support a rational finding of guilt beyond a reasonable doubt. Fed. R. Crim. P. 29(c); United States v. Powell, 469 U.S.

**Human Written** | 3 Words | Low Confidence

57, 67 (1984).

Pangram.

AI | 38 Words | High Confidence

The evidence is viewed in the light most favorable to the verdict, with reasonable inferences and credibility choices drawn in its support, and the question is whether a rational factfinder could find every element beyond a reasonable doubt.

AI | 3 Words | Low Confidence

United States v.

AI | 8 Words | Low Confidence

Cannon, 750 F.3d 492, 506 (5th Cir.

AI | 1 Words | Low Confidence

2014).

AI | 55 Words | High Confidence

In a prosecution for a false claim of citizenship or voting by an alien, that standard requires proof of each element of the charged statute, including its knowledge requirement. A conviction for falsely claiming citizenship cannot rest on a statement from which citizenship might merely be inferred; the statute requires a direct representation of citizenship.

AI | 3 Words | Low Confidence

United States v.

Pangram.

**Human Written** | 37 Words | Low Confidence

Karaouni, 379 F.3d 1139, 1142–44 (9th Cir. 2004) (checking a box attesting to being a "citizen or national" is not a claim of citizenship; collecting cases in which statements of birthplace and residence were insufficient).

**Human Written** | 60 Words | High Confidence

The government must prove that the Defendant made a claim; that Defendant's claim was false; that Defendant knew the claim was false; that he knew the claim was false at the time he made the claim; and that the false claim was made in order to vote in a Federal, State, or local election at the time of making.

**Human Written** | 8 Words | Medium Confidence

See 18 U.S.C. § 1015(f); cf.

**Human Written** | 11 Words | Low Confidence

Fotie v. United States, 137 F.2d 831, 838 (8th Cir.

**Human Written** | 11 Words | Low Confidence

1943) (reversing conviction for falsely representing citizenship in order to vote).

**AI** | 3 Words | Low Confidence

Scope of authority.

**AI** | 8 Words | Medium Confidence

Powell and Cannon state the controlling sufficiency standard.

Pangram.

AI | 28 Words | High Confidence

Karaouni and Fotie are persuasive out-of-circuit authority on the direct-claim and knowledge requirements because there is no Fifth Circuit precedent regarding 18 U.S.C.

AI | 21 Words | Medium Confidence

§ 1015(f); they are offered on those points, not to add an element that §§ 1015(f) and 611 do not contain.

Human Written | 2 Words | Low Confidence

The elements.

Human Written | 9 Words | Low Confidence

Under the charge, Count One required proof that Mr.

Human Written | 28 Words | High Confidence

Bhengura (1) knew he was an alien and (2) "knowingly made a false claim to be a citizen of the United States in order to register to vote."

Human Written | 16 Words | Medium Confidence

Court's Charge, ECF No. 71 at 8; see ECF No. 41 at 26 (Instr. No.

Human Written | 1 Words | Low Confidence

14).

**Human Written** | 25 Words | High Confidence

Count Three required proof that he was an alien, that he "knowingly voted in an election," and that the election was one for federal office.

**Human Written** | 11 Words | Medium Confidence

ECF No. 71 at 9; ECF No. 41 at 29 (Instr.

**Human Written** | 2 Words | Low Confidence

No. 15).

**Human Written** | 15 Words | High Confidence

"Knowingly" means the act was done "voluntarily and intentionally, not because of mistake or accident."

**Human Written** | 11 Words | Medium Confidence

ECF No. 71 at 6; ECF No. 41 at 33 (Instr.

**Human Written** | 1 Words | Low Confidence

No.

**Human Written** | 10 Words | High Confidence

16; Fifth Circuit Pattern Jury Instructions (Criminal) § 1.41 (2024)).

**Human Written** | 2 Words | Low Confidence

he statutes.

**Human Written** | 38 Words | High Confidence

Section 1015(f) punishes one who "knowingly makes any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election."

**Human Written** | 6 Words | Medium Confidence

18 U.S.C. § 1015(f).

**Human Written** | 40 Words | High Confidence

Section 611(a) punishes an alien who votes in an election held solely or in part to elect a federal officeholder, subject to an exception for independently conducted voting on matters for which state or local law authorizes alien voting.

**Human Written** | 6 Words | Medium Confidence

18 U.S.C. § 611(a).

**Human Written** | 27 Words | High Confidence

Both statutes except an alien whose parents were citizens, who permanently resided in the United States before age sixteen, and who reasonably believed he was a citizen.

**Human Written** | 7 Words | Medium Confidence

18 U.S.C. §§ 611(c), 1015.

**Human Written** | 12 Words | Low Confidence

THE EVIDENCE IS INSUFFICIENT ON THE KNOWLEDGE ELEMENT OF COUNT ONE A.

**AI** | 8 Words | Low Confidence

The government's only evidence of what Mr.

**AI** | 22 Words | Medium Confidence

Bhengura understood came from an uninterpreted interview the case agent himself has described, under oath and on video, as requiring a translator.

**Human Written** | 11 Words | Low Confidence

Special Agent Van Stephens testified at trial that he interviewed Mr.

**Human Written** | 21 Words | High Confidence

Bhengura in English at his apartment on August 26, 2026, that Mr. Bhengura's wife did not translate, and that Mr.

**Human Written** | 8 Words | Low Confidence

Bhengura fully understood the questions. Tr. Day 1.

**AI** | 11 Words | Low Confidence

That account is irreconcilable with the agent's own prior statements.

AI | 2 Words | Low Confidence

• Grand jury.

Human Written | 18 Words | Low Confidence

Fifteen days after the interview, Agent Van Stephens told the grand jury, under oath, that English is Mr.

Human Written | 20 Words | High Confidence

Bhengura's second language; that he had trouble understanding "[a] little bit at times"; and that "his wife was present.

Human Written | 7 Words | Medium Confidence

She spoke English and translated." GJ Tr.

Human Written | 5 Words | High Confidence

19:24–20:9 (Sept.

Human Written | 2 Words | Medium Confidence

10, 2026).

Human Written | 15 Words | Low Confidence

The agent was confronted with that testimony on cross-examination. Fed. R. Evid. 613; Tr.

Human Written | 45 Words | Medium Confidence

Day 1. The agent acknowledged the statement but testified that the wife helped very little, that he

**Human Written** | 45 Words | Medium Confidence

believed Mr. Bhengura understood everything in English and did not need an interpreter, and that the agents could have called an interpreter by telephone had one been needed.

**Human Written** | 1 Words | Low Confidence

Tr.

**Human Written** | 5 Words | Medium Confidence

Day 1. • Body-worn camera.

**Human Written** | 21 Words | High Confidence

The body-camera recording of the September 11, 2026 arrest was admitted at trial in the defense's case-in-chief.

**Human Written** | 3 Words | Medium Confidence

Gov't Ex.

**Human Written** | 3 Words | High Confidence

14; ECF No.

**Human Written** | 1 Words | Medium Confidence

65.

Human Written | 32 Words | High Confidence

On that recording Agent Van Stephens states that he would not be "getting very far" with Mr. Bhengura without a translator and suggests calling Mr. Bhengura's wife because she speaks English.

Human Written | 3 Words | Medium Confidence

Gov't Ex.

Human Written | 30 Words | High Confidence

14 at [4:30–4:36] ("[Hey,] we're not getting very far without a translator which his wife speaks English"). At trial, Agent Van Stephens admitted making this statement.

Human Written | 3 Words | Medium Confidence

Tr. Day 2.

Human Written | 5 Words | Low Confidence

The agent's own report.

Human Written | 30 Words | Medium Confidence

Agent Van Stephens acknowledged on cross-examination that his Report of Investigation records an interview of approximately five minutes, conducted without an interpreter, with Mr. Bhengura's wife present throughout.

Human Written | 1 Words | Low Confidence

Tr.

**Human Written** | 64 Words | High Confidence

Day 1; see HSI Report of Investigation DA16CS26DA0001-003 at 2–3 (GOV_P1_00000002–03) (produced in discovery). • The defendant's wife attempted to testify in English, could not, and required the Court's Punjabi interpreter. She testified that her husband did not understand what was being said by Agent Van Stephens in English and required an interpreter even at his consular interview in Mumbai.

**Human Written** | 14 Words | Low Confidence

Tr. Day 2. The Court itself ordered two Punjabi interpreters for trial. ECF No.

**Human Written** | 3 Words | Low Confidence

44 at 4.

**AI** | 16 Words | Low Confidence

The interview statements were the only evidence from which the jury could infer anything about Mr.

**AI** | 28 Words | Medium Confidence

Bhengura's state of mind. Even taken at face value, and assuming that Mr. Bhengura understood the questioning in English, they do not establish a knowing false claim.

**AI** | 23 Words | Low Confidence

As the agent conceded, and as his report records, when asked in English whether he knew he was not permitted to vote, Mr.

**Human Written** | 9 Words | Low Confidence

Bhengura allegedly answered "yes sir" and, moments later, "No.

Human Written | 37 Words | High Confidence

My friend (Brian) told me to go there and see if they had my name or not, so I went, and they did. Then I voted"; when asked whether he voted, he allegedly said, "Yes, I did.

Human Written | 6 Words | Medium Confidence

Mistakenly. Someone told me I could."

Human Written | 4 Words | Low Confidence

Tr. Day 1; GOV_P1_00000003.

AI | 7 Words | Low Confidence

The report records no statement that Mr.

AI | 22 Words | Medium Confidence

Bhengura filled out, signed, or understood the January 2024 registration application, and no statement that he ever claimed to be a citizen.

AI | 20 Words | Low Confidence

The agent admitted that these were factors he was investigating but never bothered to question Mr. Bhengura about this topic.

AI | 14 Words | Medium Confidence

The agent's grand-jury testimony that Mr. Bhengura "confirmed" claiming citizenship, GJ Tr.

**AI** | 54 Words | High Confidence

13:20–25, 25:21–23, has no counterpart in his contemporaneous report. Contradictory, uninterpreted, unrecorded statements of a 69-year-old Punjabi speaker, elicited in five minutes by two armed agents without warnings, are not evidence from which a rational juror could find knowledge beyond a reasonable doubt; they are evidence of confusion.

**AI** | 13 Words | Medium Confidence

The jury itself identified the language barrier at the center of this case.

**Human Written** | 25 Words | Medium Confidence

During deliberations it asked: "Can we get a translator for the arrest camera video to know what he is saying to his wife." ECF No.

**Human Written** | 6 Words | Low Confidence

70 at 1 (Jury Note 1).

**AI** | 45 Words | Low Confidence

No translation of the Punjabi portions of Government Exhibit 14 was ever provided to the jury. At 6:10 p.m. on October 26, the jury reported that it was "currently Hung/split on all 3 counts." ECF No. 70 at 2 (Jury Note 2).

**AI** | 8 Words | Medium Confidence

The verdict followed the next morning. ECF No.

AI | 1 Words | Low Confidence

66.

AI | 30 Words | High Confidence

The jury's copy of the charge bears handwritten underscoring beneath the phrases "knowingly made a false claim" and "not necessary for the government to prove that the Defendant knew."

AI | 5 Words | Medium Confidence

ECF No. 71 at 8.

AI | 40 Words | High Confidence

A jury that asked for a translator it did not receive, and that was divided on every count until the final morning, was not presented with evidence of knowledge that any rational factfinder would call proof beyond a reasonable doubt.

AI | 1 Words | Low Confidence

B.

AI | 7 Words | Medium Confidence

No witness with personal knowledge connected Mr.

AI | 12 Words | High Confidence

Bhengura to the completion of the application or to the polling place.

AI | 9 Words | Medium Confidence

No witness testified that he or she saw Mr.

AI | 26 Words | High Confidence

Bhengura complete, sign, or mail the January 24, 2024 voter registration application, or saw him at the East Library and Recreation Center on November 5, 2024.

AI | 4 Words | Low Confidence

Fed. R. Evid. 602.

AI | 27 Words | High Confidence

The government's witnesses from the Tarrant County Elections Administration, USCIS and the Department of Public Safety testified about records; none had any personal knowledge of Mr.

AI | 16 Words | Low Confidence

Bhengura. Tr. Day 1 (Ludwig); Tr. Day 2 (Garrett and Gonzalez). The only link between Mr.

AI | 30 Words | High Confidence

Bhengura and the mark in the citizenship box is a signature, and the only evidence that the signature is his is Agent Van Stephens's opinion that the signatures "matched."

AI | 3 Words | Low Confidence

Tr. Day 2.

**AI** | 70 Words | High Confidence

The agent is not a handwriting examiner, had never seen Mr. Bhengura's signature before this investigation, and offered his opinion more than two and a half years after the application was signed. An investigator's side-by-side comparison cannot carry the government's burden of proving beyond a reasonable doubt that Mr. Bhengura signed the application, let alone that he knowingly made the claim of citizenship on it.

**Human Written** | 21 Words | Low Confidence

Any statement made with the purpose of using it in litigation is a direct violation of the Sixth Amendment Confrontation Clause.

**AI** | 21 Words | Medium Confidence

A lay witness may authenticate handwriting only on the basis of familiarity "not acquired for the current litigation," Fed. R. Evid.

**AI** | 29 Words | High Confidence

901(b)(2). There is no theory of admissibility that makes this testimony reliable or admissible. The application itself undercuts the inference the government asked the jury to draw.

**Human Written** | 48 Words | Low Confidence

The application was generated by the Secretary of State's online application on January 17, 2024 at 12:14 p.m.—a week before the date written beside the signature—and bears a signature line reading "Signature of Applicant or Agent and Relationship to Applicant." Gov't Ex.

**Human Written** | 2 Words | Medium Confidence

2 (GOV_P1_00000009).

**Human Written** | 44 Words | Low Confidence

It lists the county of residence as "DALLAS" for an Arlington address that lies in Tarrant County, was addressed and mailed to the Dallas County registrar, was received in Dallas County on February 2, 2024, and was forwarded to Tarrant County by hand annotation.

**Human Written** | 1 Words | Low Confidence

Id.

**AI** | 41 Words | High Confidence

The government introduced no evidence of the computer, account, or internet address from which the online form was generated, no evidence of who printed or mailed it, and no evidence of the language in which it was read, explained, or completed.

**AI** | 48 Words | Medium Confidence

As a result, the lack of a chain of custody renders this evidence wholly unreliable and insufficient to support a conviction. C. The government's own evidence shows that the application was defective on its face, was accepted anyway, and was never verified against citizenship records until 2025.

**Human Written** | 23 Words | Medium Confidence

The application required the applicant to affirm that "I am a resident of this county and a U.S. Citizen." Gov't Ex.

**Human Written** | 2 Words | High Confidence

2 (GOV_P1_00000009).

**Human Written** | 5 Words | Low Confidence

The county entered was wrong.

**Human Written** | 35 Words | Medium Confidence

Elections Administrator Clint Ludwig testified that mailed applications are transmitted to the Secretary of State for verification and that the Secretary of State has rejected applications after verifying that the applicant is not a citizen.

**Human Written** | 1 Words | Low Confidence

Tr.

**Human Written** | 2 Words | Low Confidence

Day 2.

**AI** | 51 Words | Medium Confidence

Yet this application—wrong county, wrong registrar, generated a week before it was signed—was accepted, and a certificate was allegedly mailed automatically. Tr. Day 1. Not until October 2025 did the State compare the registration against USCIS SAVE records and send a notice of possible non-citizenship, Gov't Ex.

**Human Written** | 17 Words | Low Confidence

2 (GOV_P1_00000005–07), and the registration was ultimately cancelled for "Failure [to] Respond [to] Investigation," id. (GOV_P1_00000010).

AI | 24 Words | Medium Confidence

This evidence is not offered as a defense of estoppel or mistake of law, which the Court's limine order forecloses. ECF No. 39.

AI | 24 Words | High Confidence

It bears directly on the element the government had to prove: whether the words in the citizenship box reflected a knowing claim by Mr.

AI | 1 Words | Low Confidence

Bhengura.

AI | 106 Words | High Confidence

The government proved that a form containing errors a native English speaker would not make was generated online, mailed to the wrong county, and accepted without verification. It did not prove who generated it, who read it to Mr. Bhengura, or whether he understood what the box said. Without a chain of custody from the online session to the mailbox, and without any evidence of translation or comprehension, the inference that Mr. Bhengura "knowingly" claimed citizenship rests on the signature alone—and the government's own evidence shows that the signature was affixed to a document someone else prepared, in a language he does not read.

AI | 18 Words | Low Confidence

D. The government did not investigate the one witness its own evidence identified as the source of Mr.

AI | 7 Words | Low Confidence

Bhengura's belief that he could vote.

**Human Written** | 6 Words | Low Confidence

Agent Van Stephens testified that Mr.

**Human Written** | 29 Words | High Confidence

Bhengura identified a friend, "Brian," who told him he could vote and told him to go to the polling place "and see if they had my name or not."

**Human Written** | 1 Words | Medium Confidence

Tr.

**Human Written** | 6 Words | High Confidence

Day 1; GOV_P1_00000003; see GJ Tr.

**Human Written** | 6 Words | Medium Confidence

13:10–14, 15:23–24.

**AI** | 19 Words | Low Confidence

Agent Van Stephens conceded that he made no effort to identify, locate, or interview that person. Tr. Day 1.

**AI** | 27 Words | High Confidence

The government's own evidence thus supplied an innocent explanation for the vote—a mistaken belief induced by a third party—and the government left it unrebutted.

AI | 16 Words | Low Confidence

The jury was entitled to consider "the thoroughness and even the good faith of the investigation."

AI | 2 Words | Low Confidence

Kyles v.

AI | 4 Words | Low Confidence

Whitley, 514 U.S.

AI | 3 Words | Low Confidence

419, 445 (1995).

AI | 27 Words | High Confidence

An investigation that stops at the first inculpatory-sounding word and never tests the exculpatory explanation that followed it does not produce proof beyond a reasonable doubt.

AI | 1 Words | Low Confidence

E.

AI | 27 Words | High Confidence

A signature on a form, without more, is not proof beyond a reasonable doubt that a non-English-speaking signer knowingly made the statement the form contains.

**AI** | 4 Words | Medium Confidence

The evidence of Mr.

**AI** | 42 Words | High Confidence

Bhengura's limited English was undisputed and came largely from the government's side of the case: the agent's grand-jury testimony, the Court's appointment of two interpreters, the wife's inability to testify in English, and the consular interpreter.

**AI** | 7 Words | Low Confidence

The defense introduced the body-camera recording.

**Human Written** | 1 Words | Low Confidence

Mr.

**Human Written** | 17 Words | Medium Confidence

Bhengura arrived in the United States in August 2022, at age 65. Gov't Ex. 12 (GOV_P1_00000002).

**AI** | 51 Words | High Confidence

Every in-person transaction in the record shows the pattern of a man who could not reliably complete an English-language government form: • On his December 2022 identification-card application, the citizenship answer and the voter-registration question are marked over and circled, and the DPS receipt reflects "VOTER REGISTRATION: N."

**Human Written** | 3 Words | Low Confidence

Gov't Ex.

**Human Written** | 3 Words | Low Confidence

5 (GOV_P4_00000113, GOV_P4_00000127).

**AI** | 30 Words | Low Confidence

• On his March 28, 2024 driver-license application—sixty-four days after the registration charged in Count One—the "Yes" answer to "Are you a citizen of the United States?"

**AI** | 27 Words | Medium Confidence

is struck through, "No" is checked, the correction is initialed "KB," the surname field was struck and re-initialed, and the receipt again reflects "VOTER REGISTRATION: N."

**AI** | 6 Words | Low Confidence

Gov't Ex. 5 (GOV_P4_00000055, GOV_P4_00000075).

**AI** | 22 Words | High Confidence

• The August 7, 2024 application that formed the basis of Count Two was likewise followed by a receipt reading "VOTER REGISTRATION: N."

**AI** | 3 Words | Medium Confidence

Gov't Ex.

**AI** | 3 Words | High Confidence

5 (GOV_P4_00000077, GOV_P4_00000105).

AI | 6 Words | Medium Confidence

The jury acquitted on that count.

AI | 132 Words | High Confidence

When the same man, in person, before a state employee, answered the same question "No" two months after the online form answered it "Yes," the only rational inference is that the online form does not reflect his knowledge. The government offered no witness to the online form at all. The jury's acquittal on Count Two—the one form completed in a face-to-face transaction— confirms that the jury itself did not find the marks on DPS forms to be reliable evidence of knowledge; the January 2024 form, prepared outside anyone's presence, is weaker evidence still. A conviction under a statute that punishes only a knowing false claim cannot rest on the bare existence of a signature on a form the government cannot show the defendant prepared, read, or understood.

AI | 1 Words | Low Confidence

III.

AI | 16 Words | Medium Confidence

THE EVIDENCE IS INSUFFICIENT ON COUNT THREE Count Three required proof that Mr. Bhengura "knowingly voted."

AI | 1 Words | Low Confidence

Instr.

AI | 7 Words | Medium Confidence

No. 15; ECF No. 71 at 9.

AI | 25 Words | High Confidence

The government offered poll-pad and election-participation records showing a ballot cast under his registration at 2:17 p.m. on November 5,

**AI** | 25 Words | High Confidence

2024.

**AI** | 3 Words | Medium Confidence

Gov't Ex.

**AI** | 22 Words | High Confidence

2 (GOV_P1_00000008, GOV_P1_00000011). No poll worker identified him; the check-in signature was again authenticated only by the case agent's comparison.

**AI** | 3 Words | Medium Confidence

Tr. Day 1.

**AI** | 51 Words | High Confidence

The only evidence of what Mr. Bhengura understood when he went to the polling place is his alleged statement in English that a friend told him he could vote and to see whether his name was on the list—a statement the government elicited through its own agent and never rebutted.

**AI** | 3 Words | Medium Confidence

Tr. Day 1.

**AI** | 55 Words | High Confidence

On this record a rational juror could find that a vote was cast; however, a rational juror could not find beyond a reasonable doubt that Mr. Bhengura himself cast that ballot, when no identification evidence was offered beyond the agent's signature comparison, or that he knowingly voted as an alien rather than by mistake.

AI | 1 Words | Medium Confidence

Mr.

AI | 71 Words | High Confidence

Bhengura also renews and incorporates his motion to dismiss Count Three on the ground that § 611 exceeds Congress's power as applied to him, ECF Nos. 54, 57, which the Court denied on October 22, 2026, ECF No. 61, and his objection to the sentence in the charge stating that the government need not prove he knew his conduct was unlawful, ECF No. 41 at 27–28, 30– 31; ECF No.

AI | 7 Words | Medium Confidence

51; ECF No. 71 at 8–9.

AI | 23 Words | High Confidence

Because the challenge goes to the Court's constitutional authority to try the offense, it may be raised at any time, see Fed.

AI | 3 Words | Medium Confidence

R. Crim. P.

AI | 30 Words | High Confidence

12(b)(2); ECF No. 60 at 1–2 (government's concession), and Mr. Bhengura asks the Court to revisit it in light of the full trial record before judgment.

# Exhibit E

Pangram. Pangram 4.1

# AI Detection Report for The United States respectfully moves for leave to...

Nov 2, 2026 | 381 Words | Pangram 4.1

## Summary

We believe that this entire text is human-written.

### Authorship Breakdown




| | | |
|---|---|---|
| 0.1 % | of the document | AI Generated |
| 0.1 % | of the document | AI Assisted |
| 100 % | of the document | Human Written |

### Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**Human Written** | 381 Words | High Confidence

The United States respectfully moves for leave to file out of time its Motion in Limine to Preclude Defendant from Presenting Legally Invalid Defenses. As noted in the certificate of conference, this motion for leave is unopposed. The United States seeks leave to file its motion beyond the September 21 deadline, Dkt. No. 13 ¶ 16(e), for two reasons. First, the circumstances revealing that Defendant intends to rely on improper grounds for his defense did not become apparent until after the deadline had passed. Defense counsel gave two interviews (a brief one on September 261 and a more substantial one on September 292 ) that preview Defendant's likely trial rguments that almost exclusively concern irrelevant topics geared towards encouraging jury nullification. These include claiming ignorance of the law as an excuse, asserting that a state official may have misinformed Defendant of the law, and stressing Defendant's claimed "terror" about potential deportation if convicted. As explained in the accompanying motion in limine, none of these are valid issues for the jury, and absent a motion in limine they threaten to turn the trial into circus in which Defendant will seek nullification on multiple impermissible grounds. Second, the timing of this filing also reflects the uncertainty of who Defendant's trial counsel would be that existed between September 18 and October 1. After Bhengura's initial appearance on September 14 revealed that he was not entitled to appointed counsel, Defendant ultimately engaged his current counsel Nicole Knox who substituted into the case on September 18. Dkt. No. 15. Between September 18 and a show cause hearing on October 1, it was unclear

Pangram.

**Human Written** | 381 Words | High Confidence

whether Defendant's current counsel would be properly admitted into the case. Immediately after the October 1 hearing, the United States approached Ms. Knox to discuss the motion for leave and the motion in limine, and Ms. Knox stated her client would not oppose the motion for leave. She reiterated the same position on October 5 by email and in a phone conversation. Between October 1 and October 6, the United States repeatedly conferred with Ms. Knox by phone and email relating to motion in limine, with those efforts exhausted as of October 7. The United States therefore respectfully requests leave to file its motion in limine out of time.

# Exhibit F

Pangram. Pangram 4.1

# AI Detection Report for INTRODUCTION The United States respectfully moves...

Nov 2, 2026 | 4,142 Words | Pangram 4.1

## Summary

We believe that this entire text is human-written.

Authorship Breakdown




| | |
|---|---|
| 0.1 % of the document | AI Generated |
| 0.1 % of the document | AI Assisted |
| 100 % of the document | Human Written |

Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**Human Written** | 935 Words | High Confidence

INTRODUCTION The United States respectfully moves in limine for an order under Federal Rules of Evidence (“FRE”) 401 and 403 barring Defendant Bhengura from introducing any evidence or argument of the following: (1) mistake of law, (2) entrapment by estoppel, (3) selective or vindictive prosecution, and (4) appeals aimed solely at jury sympathy, including evidence of possible punishment or consequences Defendant might face upon conviction. The posture of this case suggests a serious risk of jury nullification absent the Court’s intervention. The evidence supporting the charges is conclusive: voting and voter registration documents clearly demonstrate that Defendant falsely claimed to be a citizen to register to vote and that he voted in the 2024 election; and Defendant, who speaks English, admitted to law enforcement in 2026 he was not a citizen, that he knew he was not a citizen, and that he had voted while being an alien. Given the seeming absence of any legitimate grounds for defense, it is no surprise that in a pair of recent interviews Bhengura’s counsel seemingly previewed an intent to raise a slew of improper grounds at trial. The Court should grant the motion on all four grounds. First, no valid mistake-oflaw defense exists for the offenses for which Bhengura is charged. Neither voting by aliens in a federal election, 18 U.S.C. § 611, nor false statements of citizenship in order to register to vote, id. § 1015(f), requires proof that the defendant knew he was not permitted to vote. Any evidence that Bhengura did not know about the law’s prohibitions would only confuse the jury and risk nullification. Second, any claim Bhengura might make that he was “entrapped”

Pangram.

Human Written | 935 Words | High Confidence

into voting or registering to vote because a Texas agency or a state official misinformed him must fail as a matter of law. For the defense to apply, Bhengura would have had to have been affirmatively misled about the law by a federal official or agent with authority to give the advice. Because Bhengura cannot establish that any federal official or agent informed him he could vote or register to vote, and the only plausible persons he might claim misinformed him are state officials, he should be precluded from offering this invalid defense. Third, claims of selective or vindictive prosecution have no place at trial, as they are issues that must be raised pre-trial solely to the Court. Bhengura should not be allowed to make the trial into circus by bringing politically charged claims that the prosecution has been brought for an improper purpose. Finally, the Court should prohibit all attempts to directly or indirectly inject irrelevant pleas for sympathy into the trial, including efforts to elicit sympathy based on the potential punishment or consequences Bhengura faces if case. This case should not reflect the type of appeal seemingly previewed in defense counsel's recent interviews that stresses that Bhengura is a grandfather, he's purportedly worked so hard to get to America, and that he is scared to be deported. None of these claims has any place at trial, which should concern solely the law, relevant defenses, and the evidence concerning whether the law was violated. BACKGROUND This case involves a simple set of facts conclusively establishing that the defendant Khalwinder Singh Bhengura voted in the 2024 election while being an alien and that he falsely declared himself to be a United States citizen in order to register to vote. Bhengura was born in India and spent the first 66 years of his life there. In June 2022, he was granted lawful permanent resident status, making him a Green Card holder, and he arrived in America in August 2022. In December 2022, Bhengura applied for and was granted a Texas driver's license. In his application, he admitted he was not a United States citizen, as he checked the box for "no" in response to the questions "Are you a citizen of the United States?" and "If you are a U.S. citizen, would you like to register to vote?" APP002. In January 2024, however, Bhengura registered to vote in Tarrant County using a Texas Voter Registration Application. APP005. Between December 2022 and January 2024, nothing had changed in Bhengura's immigration status, as he had not applied to become a citizen. On the Voter Registration form, he answered "yes" in response to the question "Are you a United States Citizen?" Id. He also signed his name directly below a statement affirming that he was a resident of Tarrant County and a U.S. Citizen and that he understood that it was a crime to procure a voter registration by giving false information: APP005. This application was mailed in and was processed by the state of Texas. At the time, Texas did not verify citizenship as a part of voter registration, and so Bhengura was successfully registered to vote based on his false representations that he was a citizen. In July 2024, Bhengura—seemingly aware he was still an alien—apparently lost his Green Card, and he applied for a replacement card. Then in August 2024, Bhengura again registered to vote when he applied to modify his driver's license. On this form, he checked "yes" next to the boxes for "Are you a citizen of the United States?" and "If you are a U.S. citizen, would you like to register to vote?" APP007. By checking these boxes, he affirmed that "I understand that giving false information to procure a voter registration is perjury, and a crime under state and federal law" and that "I am a resident of [Tarrant] [C]ounty .

Pangram.

Human Written | 3 Words | Medium Confidence

. .

Human Written | 394 Words | High Confidence

and a U.S. citizen.”: On November 5, 2024, Bhengura voted in person for the general and special elections. He cast his ballot at the East Library and Recreation Center in Arlington, Texas. In an interview conducted by HSI Special Agent Van Stephens in August 2026, Bhengura freely admitted he was not a citizen, that he knew he was not a citizen, and that he had voted in the 2024 election. APP011–APP012. He did, however, claim that his vote in 2024 had been “mistaken,” as he said that a friend known only as “Brian” had told him that he could vote. APP012. “Brian” supposedly “told [him] to go [to the polling station] and see if they had [his] name or not, so [he] went, and they did. Then [he] voted.” Id. Bhengura mentioned nothing about any state official telling him he could vote. Bhengura is fluent in English. When he was interviewed by the case agent, the interview was conducted in English, and although Bhengura’s wife did assist him in understanding a handful of phrases, he did not struggle with understanding questions such as whether he was a United States citizen. At his initial appearance, the United States requested a Punjabi interpreter out of an abundance of caution, but Bhengura answered the majority of the questions posed to him on the record without the need for an interpreter. In September 2026, a grand jury charged Bhengura with voting by an alien in violation of 18 U.S.C. § 611 and false statements of citizenship in order to register to vote in violation of 18 U.S.C. § 1015(f). Defense counsel Nicole Knox has given two interviews regarding Bhengura’s case that preview the arguments he will likely attempt to make at trial. In the first interview, Knox described Bhengura as “terrified to face the government of the same nation that promised liberty and freedom.” APP019. She reiterated this theme in the second interview, again claiming “he’s terrified right now,” but she also stated that her client “made an honest mistake.” APP022. As to what this mistake was, she claimed that the “Department of Motor Vehicles form was translated only into English, Spanish and Vietnamese, so Bhengura had to ask someone what the other parts meant.” APP023. And she claimed that “[w]hen a voter registration card arrived in the mail, .

Human Written | 3 Words | Medium Confidence

. .

Human Written | 121 Words | High Confidence

he believed it meant he was allowed to vote.” Id. It appears, based on these interviews, that defense intends to claim that Bhengura made a mistake of law in concluding that he could vote that was brought on first by statements by state officials at the DMV in connection with his driver’s license application and second by the state of Texas in issuing him a voter

Pangram.

**Human Written** | 121 Words | High Confidence

registration card. Finally, Knox asserted that Bhengura had “worked so long and so hard to do it the right way” and that he “now faces possible deportation.” APP023. After a hearing on October 1, 2026, the United States approached defense counsel in person to seek her client’s position on this motion in limine.

**Human Written** | 1 Words | Medium Confidence

Ms.

**Human Written** | 640 Words | High Confidence

Knox said her client might agree to parts of the United States’ motion but could not give a full answer. The United States sent Ms. Knox an email later that day reiterating the topics discussed in the meet and confer and asked for Defendant’s position. On October 5, the United States sent a second email asking Bhengura’s position and attached the draft motion in limine. Bhengura’s counsel replied by email on October 5 stating that her client opposed the motion, but in a phone conversation in the evening of October 5 Bhengura’s counsel said she would go line-by-line in assessing the motion in limine to see if there would be any issues that would be unopposed. Despite emails and an attempted phone call on October 6, no response was received, and the United States informed Ms. Knox that this motion would be filed on October 7. LEGAL STANDARD In limine rulings have “developed pursuant to the district court’s inherent authority to manage the course of trials.” Luce v. United States, 469 U.S. 38, 41 n.4 (1984). A motion in limine should be granted when the presentation of irrelevant evidence or argument risks inviting jury nullification. See United States v. Thompson, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001) (unpublished table opinion). “Jury nullification is not a ‘right’ belonging to the defendant,” id., and a “trial judge may block defense attorney’s attempts to serenade a jury with the siren song of nullification,” id. (cleaned up and quoting United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993)). “A judge has wide discretion to control the material presented by counsel” in arguments to the jury, and may preclude presentation of “baseless” legal theories. United States v. Taylor, 680 F.2d 378, 380 (5th Cir. 1982) . “The legal sufficiency of a proffered defense is a question of law.” United States v. Lee, 208 F. App’x 352, 353 (5th Cir. 2006).1 If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial. See United States v. Bailey, 444 U.S. 394, 415– 16 (1980) ( “the trial court and jury need not be burdened with testimony supporting other elements” if defendant fails to establish one element of defense); accord United States v. Penn, 969 F.3d 450, 457 (5th Cir. 2020) (evidence of affirmative defense is “irrelevant” if defendant fails to make “threshold showing” as to each element of the defense). And a court need not give an instruction on a defense theory unless “there exists evidence sufficient for a reasonable jury to find in the defendant’s favor.” United States v. Brooks, 618 F.3d 667, 678 (5th Cir. 2012) (cleaned up and citation omitted). ARGUMENT The Court should grant the motion in limine for four reasons. First, neither Section 611 nor Section 1015(f) require proof of specific intent to violate the prohibition on noncitizens voting or

**Human Written** | 640 Words | High Confidence

registering to vote, and thus evidence regarding Bhengura's claimed confusion is irrelevant and would serve only as a basis for jury nullification. Second, any affirmative defense of entrapment by estoppel must fail because no federal agent with actual authority could have or did tell Bhengura he was permitted to vote. Third, any assertion of selective or vindictive prosecution that would smear the prosecution as racially or politically motivated may only be raised pre-trial to the judge and is not for the jury. Fourth, all evidence and argument designed purely to elicit the jury's sympathy—including those based on the possible criminal or immigration consequences that Bhengura might face is convicted, any evidence about the alleged fear that he feels about these consequences—is irrelevant and impermissible.

**Human Written** | 1 Words | Medium Confidence

I.

**Human Written** | 29 Words | High Confidence

No valid mistake-of-law defense exists because neither charge Bhengura faces requires knowledge that voting by non-citizens is unlawful. It is a "deeply-rooted common law principle .

**Human Written** | 3 Words | Medium Confidence

. .

**Human Written** | 415 Words | High Confidence

that ignorance of the law provides no defense to its violation." Knapp v. U.S. Dep't of Agric., 796 F.3d 445, 467 (5th Cir. 2015) (citation omitted). This maxim as "strongly embedded in our legal system," United States v. Ho, 311 F.3d 589, 605 (5th Cir. 2002), and the Fifth Circuit held that a "mistakeof-law defense may be allowed only where the crime charged is a specific intent crime." United States v. Davis, 690 F.3d 330, 340 (5th Cir. 2012); see, e.g., United States v. FloresMartinez, 677 F.3d 699, 712 (5th Cir. 2012) ("[T]he crime of illegal reentry is not a specific intent crime, and a mistake of law is thus not a defense."). The two circuits who have construed voting by aliens, 18 U.S.C. § 611, have concluded that it is a general intent crime that does not require proof that the defendant knew of the law's prohibition on non-citizen voting. See United States v. Knight, 490 F.3d 1268, 1270 (11th Cir. 2007) ("Section 611 is a constitutional general intent crime."); Kimani v. Holder, 695 F.3d 666, 669 (7th Cir. 2012) ("a conviction under § 611(a) does not depend on proof that

**Human Written** | 415 Words | High Confidence

the alien knew that voting is forbidden”). This is because the statute omits terms “such as ‘intentional,’ ‘knowing,’ or ‘willful,’” and thus under ordinary principles of statutory interpretation this means it requires only general intent. Knight, 490 F.3d at 1270. The only elements of an offense under Section 611 are that: (1) the Defendant knew he was an alien; (2) the defendant knowingly voted in an election; and (3) that one purpose of the election was to elect a candidate for a federal office. See APP027. Any evidence as to Bhengura’s alleged confusion as to whether he could vote is therefore irrelevant and could serve only to fuel jury nullification. Although the United States is unaware of relevant authority analyzing the mens rea specifically of an offense under 18 U.S.C. § 1015(f), Fifth Circuit authority analyzing similar language supports that it too does not require proof that the defendant knew of the law’s prohibition of non-citizen voting. In relevant part, the statute provides that “[w]hoever knowingly makes any false statement or claim that he is a citizen of the United States in order to register to vote or to vote in any Federal, State, or local election” is guilty of an offense.

**Human Written** | 1 Words | Medium Confidence

Id.

**Human Written** | 191 Words | High Confidence

As to the word “knowingly,” it is black letter law that this does not create a requirement of knowledge of the law. As the Fifth Circuit has explained for statutes that contain even stronger language requiring a “knowing violation” of a statute, “unless the text of a statute dictates a different result, the term ‘knowingly’ merely requires proof of knowledge of the facts that constitute the offense.” Ho, 311 F.3d at 605 (quoting Bryan v. United States, 524 U.S. 184, 193 (1998)).2 In other words, the only requirements “requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.’” Id. Consequently, Bhengura would be guilty, even if he lacked knowledge that he could not lawfully register to vote or actually vote, of an offense under Section 1015(f) if he (1) knew that he was a non-citizen, (2) was aware that he claimed to be a citizen, and (3) that he was doing so to register to vote for an election. As a result, any evidence he might present that he was unaware of the law’s prohibitions should be excluded.

**Human Written** | 1 Words | Medium Confidence

II.

**Human Written** | 239 Words | High Confidence

Any assertion of an entrapment-by-estoppel defense must fail because Defendant cannot show that a federal agent with actual authority told him that he could vote. Any claim Bhengura might make that he was "entrapped" into committing his offenses because a Texas state agency or a Texas official misinformed him of the law or lulled him into believing he could vote must fail because no federal agent with actual authority could have made such statements to Bhengura. Entrapment by estoppel "is a narrow exception to the general rule that ignorance of the law is no excuse and is based on fundamental fairness concerns of the Due Process Clause." United States v. Ahmadou, 159 F.4th 936, 942 (5th Cir. 2025). To establish an entrapment-by-estoppel claim, a defendant must show reasonable "reliance either on a federal government official empowered to render the claimed erroneous advice, or on an authorized agent of the federal government who has been granted the authority from the federal government to render such advice." Id. A "mere failure to inform" a defendant of the law "does not trigger the defense." Id. at 943. Instead, the United States must "actively mislead the defendant by inducing him to rely on an affirmative misrepresentation of the law by the government official." Id. at 942 (cleaned up) Bhengura's claim that he was lulled into voting because "[w]hen a voter registration card arrived in the mail, .

**Human Written** | 3 Words | Medium Confidence

. .

**Human Written** | 59 Words | High Confidence

he believed it meant he was allowed to vote," APP023, is very similar to a defense that the Fifth Circuit rejected in United States v. Trevino-Martinez, 86 F.3d 65, 69 (5th Cir. 1996). There, a defendant charged under Section 1326 claimed that he was entrapped into reentering the country after he was erroneously issued a nonimmigrant visa.

**Human Written** | 1 Words | Medium Confidence

Id.

**Human Written** | 531 Words | High Confidence

The Fifth Circuit first explained that merely issuing a government document in error does not "affirmatively misrepresent[ ] as legal" the defendant's unlawful acts. Id.; see also United States v. Hungerford, No. 21-30359, 2023 WL 8179273, at *8 (5th Cir. Nov. 27, 2023) ("mere approval by a government official is insufficient

**Human Written** | 531 Words | High Confidence

to entitle defendants to an estoppel defense"). The Fifth Circuit added that because the defendant had not given government officials material information—there, information about prior arrests and deportations—he "could not have reasonably relied on the consulate's 'misrepresentations' of his actions as legal." Trevino-Martinez, 86 F.3d. at 70. Any similar claim Bhengura could make about the issuance of a voter registration card is insufficient as a matter of law. Nothing about receiving a voter registration card affirmatively misleads by stating it is legal for non-citizens to vote. And Bhengura lied in calling himself a United States citizen when he registered to vote in January 2024. APP005. Thus, because he provided the state officials with false information, he cannot claim to "have reasonably relied on the [the state of Texas's] 'misrepresentations' of his actions as legal." Trevino-Martinez, 86 F.3d at 70. For any other claim that Bhengura could make as to alleged misstatements of the law he might have received from state officials, they must fail because he cannot establish that these statements were made by federal agent with actual authority to give such advice. The Fifth Circuit has been stringent in rejecting entrapment-by-estoppel defenses that do not involve federal officials or agents. It has repeatedly held that the defense does not apply where "a defendant relies on a state official's assurances to his detriment under federal law." United States v. Viola, 768 F. App'x 238, 240 (5th Cir. 2019) (citing United States v. Spires, 79 F.3d 464, 466 (5th Cir. 1996) (task force officer whose task force received federal funds was "not an authorized federal government agent" for purposes of federal drug trafficking laws); United States v. Hale, 685 F.3d 522, 542–43 (5th Cir. 2012) (per curiam) (similar)). It has likewise even rejected defenses involving claims that federally licensed firearm dealers are federal officials for purposes of the defense. Ahmadou, 159 F.4th at 944 ("Federal regulations of government contractors do not convert the acts of entrepreneurs or of state governmental bodies into federal governmental acts."). Similarly here, because the only possible persons Bhengura could have interacted with at the Texas DMV or at a polling place would be state officials, he cannot show that any federal agents with actual authority who could have misdirected him. Thus, all evidence regarding an entrapment-by-estoppel defense should be excluded. Claims of selective or vindictive prosecution are for the Court, not the jury. Any evidence Bhengura might present to smear the prosecution before the jury by claiming imagined improper prosecutorial motivations, including racial or political motives, should be excluded because any claim "regarding selective prosecution must be raised with the Court before trial and should not be presented to the jury." United States v. Baker, No. CR 24-99, 2025 WL 1866022, at *4 (E.D.

**Human Written** | 1 Words | Medium Confidence

La.

**Human Written** | 192 Words | High Confidence

July 7, 2025). Federal Rule of Criminal Procedure 12(b)(3)(A) provides that a claim of "selective or vindictive prosecution" must be "raised by pretrial motion if the basis for the motion

**Human Written** | 192 Words | High Confidence

is then reasonably available.” As the Supreme Court has held, a “selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.” United States v. Armstrong, 517 U.S. 456, 463 (1996). Every circuit to consider the matter has held that such evidence is not for the jury. See, e.g., United States v. Abboud, 438 F.3d 554, 579–80 (6th Cir. 2006) (“a ‘defense’ of selective prosecution is a matter for the court, not the jury,” and affirming district court’s grant of motion in limine for selective prosecution evidence).3 The Court should prohibit Bhengura from offering evidence of or making accusations during trial—such as claiming that the prosecution is a part of President Donald Trump’s allegedly illegitimate efforts to root out voter fraud—that the prosecution is motivated by an improper purpose.

**Human Written** | 1 Words | Medium Confidence

IV.

**Human Written** | 389 Words | High Confidence

The Court should prohibit Bhengura from presenting evidence and argument solely appealing to the jury’s sympathy or mentioning potential punishment or consequences that might result from conviction. Finally, the United States seeks to exclude evidence and argument about the potential penalties Defendant faces if convicted at trial, any claimed hardships his conviction would place upon his family or third parties, or other evidence and arguments designed to appeal to the jury’s sympathy that are untethered to the elements of the offenses. There appears to be a live risk that defense counsel might seek to inject these issues into trial, either by claiming that the defendant is “terrified” by the prosecution or by stressing that he may lose what he gained by working so hard to get to the United States. See APP023. “[T]he jury [has] no sentencing function and should reach its verdict without regard to what sentence might be imposed.” Rogers v. United States, 422 U.S. 35, 40 (1975) (“Information regarding the consequence of a verdict is therefore irrelevant to the jury’s task.”).The Fifth Circuit’s Pattern Instructions 1.04 and 1.22 tell the jury to disregard sympathy, the consequences of the verdict, and potential punishment. Pattern Jury Instructions: Fifth Circuit (Criminal) §§ 1.04, 1.22 (2024). Because any evidence or argument alluding to possible punishment or consequences, including deportation, has no probative value for any element at issue, it should be excluded as irrelevant and more prejudicial than probative. Likewise, any presentation of evidence at trial for the purpose of eliciting sympathy, such as by describing Bhengura’s family or living situation, should also be excluded. CONCLUSION Should this case go to trial, the only relevant evidence concerns whether the Defendant is guilty of voting while being an alien and making false claims of citizenship in order to vote. Because the defenses that Bhengura has hinted he might raise and the emotional appeals he indicates he wants to make are irrelevant and unfairly prejudicial, the Court should prohibit them. Therefore, the United States respectfully requests an order barring Defendant for presenting evidence at argument on the following: (1) mistake of law, (2) entrapment by

Human Written | 389 Words | High Confidence

estoppel, (3) selective or vindictive prosecution, and (4) appeals aimed solely at jury sympathy, including evidence of possible punishment or consequences Defendant might face upon conviction.

# Exhibit G

Pangram. Pangram 4.1

# AI Detection Report for The United States opposes Defendant's motion for l...

Nov 2, 2026 | 841 Words | Pangram 4.1

## Summary

We believe that this entire text is human-written.

### Authorship Breakdown




**0.1 %** of the document — AI Generated

**0.1 %** of the document — AI Assisted

**100 %** of the document — Human Written

### Authorship Progression



Pangram.

**Human Written** | 262 Words | High Confidence

The United States opposes Defendant's motion for leave to file a motion to dismiss (grossly) out of time. The motion to dismiss that Defendant seeks to advance was filed on the Court's docket less than 36 hours before the trial in this matter and is weeks after the relevant motions deadline. Defendant's lack of diligence in pursuing this defense precludes bringing it late now. Although Defendant claims that he purportedly could not have raised this defense before he apparently belatedly discovered on October 21 that three weeks earlier a nonbinding, poorly reasoned,1 out-of-circuit decision was issued on October 1 in a district court n Florida, this is a poor excuse for failing to conduct basic research and preparation for this type of case before then. Long before the Cox decision was entered in October, at least five defendants throughout the United States managed to file motions to dismiss raising the same argument Defendant seeks to make. See Tom Hals, Noncitizens Accused of Illegal US Voting Challenge Trump's Authority to Prosecute Them, Reuters (Sept. 15, 2026), available at https://www.reuters.com/legal/government/noncitizens-accused-illegal-usvoting-challenge-trumps-authority-prosecute-them-2026-09-15/ (observing in September 15 article—two weeks before the Cox decision and the motions deadline in this case—that five defendants had challenged Section 611 in pending cases throughout the United States and that the first motion to dismiss raising the issue was filed in March 2026); e.g., United States v. Valdez, No. 3:25-mj-00148 (W.D.

**Human Written** | 1 Words | Medium Confidence

Wis.

**Human Written** | 35 Words | High Confidence

Mar. 3, 2026), Dkt. No. 19; United States v. Cox, No. 0:25-cr-60249 (S.D. Fla. Apr. 9, 2026), Dkt. No. 30; United States v. Murillo, No. 3:26-mj-00004 (W.D.

**Human Written** | 1 Words | Medium Confidence

Wis.

**Human Written** | 120 Words | High Confidence

Apr. 27, 2026), Dkt. No. 15; United States v. Sylvestre, No. 1:26-cr-20081 (S.D. Fla. Apr. 28, 2026), Dkt. No. 20; United States v. Murray, No. 1:26-cr-20104 (S.D. Fla. July 20, 2026), Dkt. No. 17. And after the Cox decision, it didn't take long for diligent defense counsel in other cases to file copycat motions. For instance,

Pangram.

**Human Written** | 120 Words | High Confidence

consider that in United States v. Guppy the initial charges were filed on September 23, 2026 (two weeks after the relevant charges were filed here), and the defendant was able to file a motion to dismiss on this ground within a week of the Cox decision coming out. No. 2:26-cr-457 (E.D.

**Human Written** | 1 Words | Medium Confidence

Pa.

**Human Written** | 421 Words | High Confidence

Oct. 9, 2026), Dkt. No. 15. Why Defendant could not have been at least as quick with his motion as counsel in Guppy given that Bhengura had a two-week head start is unexplained. This Court has often observed that the Fort Worth division is among the busiest federal district courts in the nation and that consequently this Court does not have time for unnecessary motions practice. Because Defendant has no excuse for why he could not and did not discover or pursue this defense at any time before the recent medical emergency incapacitated one member of his defense team, the Court need not waste its time ruling on this meritless motion to dismiss. The United States notes that the decision in Cox is on appeal. Without going into all the flaws in the Cox decision, suffice it to say that Judge Leibowitz violated Supreme Court precedent governing facial and as-applied challenges to federal statutes: If the particular factual application of a federal statute before a district court falls within Congress's enumerated powers, the district court generally cannot invalidate that application of the statute on the ground that other applications may exceed those powers. See United States v. Raines, 362 U.S. 17 (1960); United States v. Georgia, 546 U.S. 151, 158–59 (2006) (holding that Title II of the ADA was a constitutional exercise of Congress's power to enforce the Fourteenth Amendment as applied to conduct that actually violated the Fourteenth Amendment, even though the statute sweeps well beyond such conduct and may well be unconstitutional in such applications); cf. Sabri v. United States, 541 U.S. 600, 608–609 (2004) (citing Raines for the proposition that "laws should not be invalidated by 'reference to hypothetical cases,'" and adding that "facial challenges are best when infrequent"); Woods v. Cloyd W. Miller Co., 333 U.S. 138, 144 (1948) ("The question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise."). Thus, even though Section 611 covers non-citizens' voting in federal elections in both States that ban such conduct and any States that do not (which Judge Leibowitz found to be problematic), the statute is constitutional as applied to the former regardless of whether it would be unconstitutional as applied to the latter—especially given that the latter is an entirely hypothetical application of the statute (as all States, since well-before Section 611's enactment, have banned non-citizens from voting in federal elections).

# Exhibit H

Pangram. Pangram 4.1

# AI Detection Report for The United States hereby gives notice that it with...

Nov 2, 2026 | 396 Words | Pangram 4.1

## Summary

We believe that this entire text is human-written.

### Authorship Breakdown




| | |
|---|---|
| 0.1 % of the document | AI Generated |
| 0.1 % of the document | AI Assisted |
| 100 % of the document | Human Written |

### Authorship Progression




## Analyzed Text

Words that are underlined indicate AI phrases, while the numbers represent how frequently they are likely to appear in AI writing. These elements are not used to determine the results but are displayed separately as patterns commonly found in AI-generated text.

**Human Written** | 157 Words | High Confidence

The United States hereby gives notice that it withdraws its opposition to Defendant's motion for leave to file motion to dismiss out of time but requests either that the Court deny the motion to dismiss without requiring additional response from the United States before trial or reserve ruling on the motion to dismiss Count 3 until after trial. The United States' opposition filed last night was drafted based on the anticipated claim for good cause—that the Cox decision justified a late motion—which is without merit. After further consideration of the motion for leave after it was received last night, the United States agrees that it would likely constitute reversible error to not consider the motion to dismiss at some point during the pendency of the case in the district court because it involves the question whether the Court has authority under the constitution to try the defendant as to the § 611 count. See Fed.

**Human Written** | 1 Words | Medium Confidence

R.

Pangram.

**Human Written** | 238 Words | High Confidence

Crim. P. 12(b)(2); 1A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Criminal § 194 (5th ed. 2026) ("The failure to raise th[is kind of] issue at any particular time during the pendency of the case therefore has no effect on a court's duty to consider the motion on the merits" (citing United States v. Cotton, 535 U.S. 625 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in [the] district court.")). The United States is aware from discussing the matter with the AUSA who tried the case in Malakai (for which unfortunately there is no transcript yet) that the judge there followed the following procedure that could be warranted here: Judge Jung sua sponte raised the § 611 issue after he learned about it from other cases, explained on the record he was incorporating by reference into the case the briefing on § 611 from the other districts, and denied any motion about the issue before trial. See United States v. Malakai, No. 8:25-CR-544 (M.D. Fla.). The United States would request that the Court either follow that example or defer ruling on the motion to dismiss until after the United States has a chance to prepare briefing on it post-trial.